**Benny ALLEN, Jr., et al., Plaintiffs,**

v.

**ETHICON, INC., et al., Defendants.**

No. C–1–94–256.

United States District Court,
S.D. Ohio,
Western Division.

Jan. 30, 1996.

Benny Allen, Jr., Cincinnati, OH, pro se.

Diane Kraus, Williamsburg, OH, pro se.

Roger Alan Weber, Taft, Stettinius & Hollister, Cincinnati, OH, for defendants.

## *ORDER*

HERMAN J. WEBER, District Judge.

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 33) to which neither party has objected.

Upon a review of the record, the Court finds that the Judge has accurately set forth the applicable law and has properly applied it to the particular facts of this case. Accordingly, in the absence of any objection by plaintiff, this Court accepts the Report as uncontroverted.

The Report and Recommendation of the United States Magistrate Judge (doc. no. 33) is hereby **ADOPTED.** Defendants' Motion for Summary Judgment as to Allen's Age Discrimination Claims is **GRANTED;** defendants' Motion for Summary Judgment as to Allen's Race Discrimination Claims is **GRANTED;** defendants' Motion for Summary Judgment as to Kraus's Sex Discrimination Claims is **GRANTED;** defendants' Motion for Summary Judgment as to Allen's Breach of Contract and Promissory Estoppel Claims is **GRANTED;** defendants' Motion for Summary Judgment as to Kraus's Breach of Contract and Promissory Estoppel Claims is **GRANTED.**

Plaintiff's Complaint is **DISMISSED WITH PREJUDICE.** This case is **TERMINATED** on the docket of this Court.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

STEINBERG, United States Magistrate Judge.

This matter is before the Court on the responses of plaintiffs Benny Allen, Jr. and Diane Kraus to the Court's order to show

cause why summary judgment should not be entered against them (Docs. 29, 30) and the memorandum in support of summary judgment by Defendants Ethicon, Inc. (Ethicon) and Ethicon Endo–Surgery. (Doc. 31).

Allen and Kraus bring this discrimination and breach of contract action alleging discrimination claims under the Age Discrimination in Employment Act (ADEA) 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 as amended 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and Ohio Rev.Code §§ 4112.02 and 4112.99, as well as breach of contract and promissory estoppel claims under Ohio common law. Defendants contend that summary judgment as to the discrimination claims is proper because Allen has failed to establish a *prima facie* race or age discrimination case and Kraus has failed to establish a *prima facie* sex discrimination case. Defendants also contend that plaintiffs failed to demonstrate that defendants' articulated non-discriminatory reason for their termination was pretextual. Defendants argue that summary judgment as to the breach of contract claims by Allen and Kraus is proper because they were at-will employees who never entered into an enforceable employment agreement and they cannot establish the necessary elements of a promissory estoppel claim.

Allen and Kraus filed this action on March 3, 1994. (Doc. 1). On March 3, 1995, plaintiffs' counsel filed a motion to withdraw as trial attorney. (Doc. 18). On July 24, 1995 this Court granted the motion. (Doc. 27). Allen and Kraus are now proceeding pro se.

## UNDISPUTED FACTS

Ethicon, Inc. is an Ohio corporation and wholly owned subsidiary of Johnson and Johnson. (Doc. 31, Def.'s memo., p. 8). Allen and Kraus were employed by Ethicon, Inc. in the endo-surgery division's human resources department (HRD). Director of Human Resources Robert L. Ward supervised Allen. Allen supervised Kraus until April 1993 when Director of Organizational Development and Training Maureen Nash became Kraus's supervisor. On September 1, 1993, after Kraus and Allen were terminated, Ethicon and Ortho Diagnostic Systems, Inc. a New Jersey corporation organized a partnership under New Jersey law by the name of Ethicon Endo–Surgery, Inc., the other defendant in this case. (Id. at p. 9).

## A. Ethicon's Endo–Surgery Division was Reorganized to Improve Its Efficiency and Financial Performance

In 1992, Ethicon, Inc.'s endo-surgery division lost approximately ninety-three million dollars. (Doc. 31, Def.'s memo., Ward aff. and attachment A). Due to this lack of profitability, Ethicon's senior management hired a consulting firm to analyze the division's financial performance and develop new strategies. (Id.). Following this review, Ethicon's endo-surgery division was reorganized per the following plan: (1) redesign the division's organizational structure; (2) create a surgical procedure and team oriented division; and, (3) improve efficiencies and eliminate redundancies among the division's support services. (Id.). As part of the reorganization, the HRD was reorganized to provide organizational development rather than training services. (Doc. 31, Def.'s memo., pp. 11–12).

After the endo-surgery division defined its new organizational structure, it developed job descriptions based on the "skill sets" and "core competencies" necessary for each position in the division. (Id. at p. 12). Allen and Kraus were not involved in this process. (Id.). Ethicon assessed all current employees, including Allen and Kraus, to identify their skills and evaluate their compatibility with a new position. The factors used to determine if an employee was qualified for a position in the endo-surgery division included the following: (1) possession of required "skill sets"; (2) "core competencies"; and, (3) demonstrated performance. Incumbent employees whose skills matched those required for a new position were retained. Employees whose skills and experience were determined to be a mismatch were considered for reassignment, and employees whose skills did not fit a new position were "outplaced." (Id. at p. 13). Ward and Nash evaluated Allen and Kraus based on these criteria.

Ethicon conducted statistical adverse impact studies to verify that the reorganization

process and its resulting lay offs would not adversely affect employees on the basis of age, race, or sex. (Doc. 31, Def.'s memo., p. 14 and Ward Aff., attachments B, C, D). Ethicon's statistical analysis indicates that a higher percentage of white employees, male employees, and employees under the age of forty were laid off than employees in a protected class. (Id.).

## B. The Plaintiffs

Plaintiff Benny Allen, a black male, worked for Ethicon's endo-surgery division for twenty-one years and was forty-nine years old at the time of his termination. (Doc. 30, Allen's resp., p. 1). As the HRD Senior Personnel Administrator, he administered organizational development and training programs including workplace literacy, team development, manufacturing practices, communication skills training, and problem-solving skills. (Doc. 30, Allen's resp., p. 2; Doc. 31, Def.'s memo., p. 16) Allen also worked in other HRD areas, such as recruitment, affirmative action programming, and employee relations. (Doc. 30, Allen's resp., p. 2). As part of the endo-surgery division's reorganization, Ethicon reorganized the HRD and redefined Allen's position. Ward and Nash evaluated all HRD employees, including Allen, based on their skills, experience, and performance. (Doc. 31, Def.'s memo., p. 16). Ward and Nash perceived that Allen lacked the skills, education, and expertise in the human relations field necessary for a position in the reorganized HRD. (Doc. 31, Def.'s memo., p. 17). They determined that his skills and experience did not match any other position within the company. (Doc. 31, Def.'s memo., p. 19; Doc. 30, Allen resp., p. 3). Ward and Nash informed Allen that he was being laid off for these reasons. (Doc. 31, Def.'s memo., p. 19). On July 30, 1993, Ethicon terminated Allen's employment. (Doc. 31, Def.'s memo, p. 19; Doc. 30, Allen resp., p. 3). Thereafter, Lisa Pierce, a younger white female and Allen's former secretary, was promoted to assume some of Allen's former duties while an unnamed white male was hired to perform the rest of his duties. (Id. at p. 3).

Plaintiff Diane Kraus was a Senior Training Coordinator and had worked at Ethicon for over seven years at the time of her lay off. (Doc. 31, Def.'s memo., p. 20; Doc. 29, Kraus's resp., Ex. 21). Kraus's job responsibilities included conducting training classes, developing training activity evaluation criteria, preparing training outlines and visual aids, scheduling training courses, locating and contacting outside instructors for organizational training courses, and coordinating paperwork for tuition reimbursement. (Id.). As a result of Ethicon's reorganization, Kraus's position was eliminated. (Id. at p. 22). Ward and Nash evaluated Kraus based on her skills, experience, and performance. They determined that she lacked the skills and experience required for a position with the reorganized company. (Id. at p. 23). On July 30, 1993, Ethicon terminated her employment. (Id. at pp. 20–21).

## C. The Johnson and Johnson Credo

The Johnson and Johnson Credo was written over forty years ago by then Chairman of the Board Roberts Wood Johnson. (Doc. 29, Kraus's resp., Ex. 1). The Credo outlines the company's philosophy concerning its responsibilities to the medical professionals and consumers who use its products, its stockholders and employees, and the communities in which it operates. (Id.). The Credo states in pertinent part:

> We are responsible to our employees, the men and women who work with us throughout the world. Everyone must be considered an individual. We must respect their dignity and recognize their merit. They must have a sense of security in their jobs. Compensation must be fair and adequate, and working conditions clean, orderly, and safe. Employees must feel free to make suggestions and complaints. There must be equal opportunity for employment, development, and advancement for those qualified. We must provide competent management, and their actions must be just and ethical.

(Doc. 31, Def.'s memo., p. 49; Doc. 29, Kraus resp., Ex. 1, ¶ 2). The Credo is widely circulated among all Johnson and Johnson employees, posted in company offices, and used as the basis for an Ethicon employee satisfaction survey conducted every eighteen months. (Doc. 31, Def.'s memo., pp. 49–50;

Doc. 29, Kraus resp., pp. 1–2). Johnson and Johnson also includes copies of the Credo in the company's annual reports. (Id.). As Ethicon employees, both Allen and Kraus received copies of the Credo. They discussed it with new employees during orientation training sessions and participated in Credo surveys. (Doc. 29, Kraus resp., p. 2; Doc. 30, Allen resp., p. 3).

### DEFENDANTS' SUMMARY JUDGMENT MOTION ON ALLEN'S RACE AND AGE DISCRIMINATION CLAIMS AND KRAUS'S SEX DISCRIMINATION CLAIMS SHOULD BE GRANTED

Defendants contend that summary judgment as to the discrimination claims by Allen and Kraus is proper because they fail to come forward with evidence sufficient to establish a *prima facie* discrimination case. Defendants contend that neither Allen nor Kraus offered any evidence tending to indicate that Ethicon management singled them out for termination based on their membership in a protected group. Defendants argue that the only reason Allen and Kraus were terminated is that they both lacked the appropriate skills for a position within the reorganized company. Defendants also argue that even if plaintiffs established a *prima facie* case, they failed to offer any evidence that contradicts defendants' legitimate non-discriminatory reason for their termination. Defendants contend that Allen's performance began to deteriorate in the months before his termination and that he engaged in unethical conduct by hiring an outside consultant with whom he was having an amorous relationship.

Allen argues that Ethicon's decision to discharge him was based on his race and age. Allen asserts that his request for reassignment to a position for which Ward and Nash found him qualified was denied while other white employees were reassigned. He cites this as evidence of racial discrimination. Allen contends that Ethicon terminated his employment prior to his fiftieth birthday to save the company approximately two million dollars in wages and benefits. Allen also argues that he was denied reassignment in the organization because of his age while Pierce and

an unnamed younger white male were promoted to assume his duties. Allen alleges that in 1992 and 1993 Ward denied his requests to attend a training seminar but sent Pierce, who had no training responsibilities, to the same seminar. He claims this demonstrates that he was discriminated against because of his race and age. Allen contends that the company hired younger people to perform the duties he had been performing since 1989.

Kraus contends that Ethicon discharged her because of her sex. She claims that an unnamed male who lacked her level of qualification was promoted to the safety coordinator. Kraus also claims that an unnamed male in her department was transferred to another department while she was denied a transfer. Kraus asserts that, after the reorganization, a male was hired to take over her former position as training administrator.

■ The same evidentiary framework applies to discrimination claims brought under Title VII, the ADEA, 42 U.S.C. § 1981, and discrimination claims brought under Ohio state law. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992). A plaintiff may establish a *prima facie* case by presenting either direct or circumstantial evidence of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66 (6th Cir. 1982). A plaintiff may establish a *prima facie* case through the following circumstantial evidence: (1) she is a member of the protected class; (2) she was discharged; (3) she was performing satisfactorily; (4) she was replaced by a person outside the protected class; and, (5) where plaintiff is discharged as the result of a reduction in force or corporate reorganization, as in the present case, she must come forward with "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990); *Allen v. Diebold, Inc.*, 33 F.3d 674, 677–78 (6th Cir.1994).

In other words, plaintiffs must show that age, race, or sex was a determining factor in the adverse action the employer took against them. *Wilson v. Firestone Tire & Rubber Co.,* 932 F.2d 510, 514 (6th Cir.1991).

The employment discrimination statutes were not intended to protect workers from the harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings, and relocations. *Allen* at 677. Plaintiffs must establish that the employer discriminated against them because they were in the protected group, not because they were expensive to retain. *Id. See also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–11, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). The statutes do not bar the discharge of employees, but only prohibit employers from discriminating against them because they are members of a protected class. *Id.* at 679. The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. *Mitchell,* 964 F.2d at 582–84.

### Plaintiff Allen Has Failed to Establish a Prima Facie Race or Age Discrimination Case

■ In the instant case, Allen offers no evidence that defendants terminated his employment because of his age. Allen's contention that Ethicon terminated his employment to save approximately two million dollars, even if true, does not state an age discrimination claim. *See Allen,* 33 F.3d at 677. Allen alleges that younger employees were hired to replace him and that some white employees were offered reassignment while his request for reassignment was denied. Yet Allen fails to come forward with any direct, circumstantial, or statistical evidence to contradict the results of Ethicon's adverse impact study which indicates that a higher percentage of white employees and employees under forty were laid off than employees in a protected class. Allen concedes that Nash told him he was being terminated because his skills did not match those necessary for a position in the reorganized company. Allen fails to present evidence sufficient to create a genuine issue of material fact in support of his assertion that he was terminated because of

his race or his age. For the foregoing reasons, defendants' summary judgment motion on Allen's race and age discrimination claims should be granted.

### Plaintiff Kraus Has Failed to Establish a Prima Facie Sex Discrimination Case

■ In the instant case, plaintiff Kraus has failed to offer any evidence that she was discharged because she is a woman. Ethicon's adverse impact analysis demonstrates that the company terminated a greater percentage of men than women as a result of the reorganization. Kraus fails to offer any direct, circumstantial or statistical evidence to contradict these findings. Kraus offers no evidence that she possessed superior or equivalent qualifications in comparison to the unnamed male who was promoted or the male who was hired as training administrator following her termination. Standing alone, her allegations that these men were not as qualified as her are insufficient to create a genuine issue of material fact and avoid summary judgment. Kraus fails to offer any evidence indicating that she was terminated because of her sex. For the foregoing reasons, defendants' summary judgment motion on Kraus's sex discrimination claims should be granted.

### DEFENDANTS' SUMMARY JUDGMENT MOTION ON PLAINTIFFS' BREACH OF CONTRACT AND PROMISSORY ESTOPPEL CLAIMS SHOULD BE GRANTED

■ Allen and Kraus contend that defendants breached an implied employment agreement by terminating their employment. Allen asserts that the Credo and the employee handbook constituted promises of continued employment upon which he reasonably relied. Specifically, Allen contends that the Credo and non-discrimination language in the employee handbook represent specific promises of lifetime employment. (Doc. 30, Allen resp., pp. 4–5).

Kraus contends that because the Credo was posted throughout Johnson and Johnson offices, including Ethicon, circulated among incoming employees during orientation, reprinted in the company's annual reports, and

used as the basis for employee satisfaction surveys every eighteen months it constitutes a specific promise on which she and other employees reasonably relied. Kraus argues that passages in the book entitled *Johnson and Johnson: A Century of Caring*, which she received from Ethicon as a gift, chronicle Johnson and Johnson's history of refraining from lay offs during periods of economic difficulty and led her to believe that Ethicon would not lay off employees following the 1993 reorganization. Kraus alleges that other unnamed employees told her that when they were hired they were promised job security. Kraus also argues that a meeting she had with Nash to develop an HRD training schedule for 1994 is evidence of a promise that her employment at Ethicon would continue.

Under Ohio law, an employee who is hired for an indefinite period of time is an employee at will. *Henkel v. Educational Research Council of America*, 45 Ohio St.2d 249, 344 N.E.2d 118, syllabus (1976). Either party to an at-will employment agreement may terminate the relationship, and the employee is subject to discharge at any time for any reason not contrary to law. *Id.* at 255, 344 N.E.2d at 122. An employment contract is presumptively at-will unless facts and circumstances indicate that the agreement is for a specific term. *Id.* In 1985, the Ohio Supreme Court rejected a request to abandon the employment-at-will doctrine. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103, 483 N.E.2d 150, 153–54 (1985). In doing so, however, it recognized that there are occasions when exceptions to the general rule are recognized in the interest of justice. Two such exceptions are: (1) the existence of express or implied contractual provisions that alter the terms of discharge; and, (2) the existence of promissory estoppel stemming from promises made to the employee regarding the terms of discharge. *Id.* at 104, 483 N.E.2d at 154.

The elements necessary to demonstrate modification of an employment-at-will agreement are generally the same whether the plaintiff relies on an implied contract or a promissory estoppel theory. *See Nitz v. Goodyear Tire & Rubber Co.*,

1995 WL 500073, *2 (Ohio Ct.App.1995) (citing *Gargasz v. Nordson Corp.*, 68 Ohio App.3d 149, 155, 587 N.E.2d 475, 478 (1991)). Praise with respect to job performance and discussions of future career development standing alone will not modify an employment-at-will relationship. *Helmick v. Cincinnati Word Processing, Inc.*, 45 Ohio St.3d 131, 136, 543 N.E.2d 1212, 1216 (1989). Plaintiffs must establish that defendants made a clear and unambiguous offer or promise. *See Tersigni v. General Tire, Inc.*, 91 Ohio App.3d 757, 760–61, 633 N.E.2d 1140, 1142 (1993); *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 110–11, 570 N.E.2d 1095, 1098–99 (1991). *See also Kasuri v. St. Elizabeth Hospital Medical Center*, 897 F.2d 845 (6th Cir.1990). Plaintiffs must demonstrate reasonable reliance on defendants' offer or promise. *Sowards v. Norbar, Inc.*, 78 Ohio App.3d 545, 551–52, 605 N.E.2d 468, 472 (1992); *Kelly v. Georgia–Pacific Corp.*, 46 Ohio St.3d 134, 139–40, 545 N.E.2d 1244, 1250 (1989). Plaintiffs must also demonstrate consideration or substantial detrimental reliance upon the promise. *See Tersigni*, 91 Ohio App.3d at 759, 633 N.E.2d at 1142; *Wing*, 59 Ohio St.3d at 110–11, 570 N.E.2d at 1099. *See also Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 488–489 (6th Cir.1995); *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1040–41 (6th Cir.1992).

The Credo is not a specific promise of job security or continued employment but rather an articulation of Johnson and Johnson's aspirational goals and ideals. *See Tripodi v. Johnson & Johnson*, 877 F.Supp. 233, 239–40 (D.N.J.1995). The Credo was circulated among Defendants' employees, suppliers, shareholders, and customers. Clearly, the Credo does not constitute a contract to guarantee a profit to defendants' shareholders, suppliers, or distributors. Nor does the Credo create an employment agreement between defendants and their employees. *See Id.* at 240. Assuming, as Allen alleges, that the Credo constitutes a promise of life time employment, under Ohio law such a promise is an offer of employment for an indefinite period; therefore, it is terminable at will. *See Henkel*, 45 Ohio St.2d at 255, 344 N.E.2d at 121–22.

The Ethicon employee handbook contains a disclaimer stating that it does not constitute a contract of employment. As employees in the HRD, both Allen and Kraus were aware of this disclaimer and were aware that all Ethicon employment agreements contained clauses stating that employment was at-will. Allen fails to present any evidence of specific promises or representations made to him by Ward, Nash or any other Ethicon employee that he would remain employed for a definite period of time. Kraus also fails to offer any evidence of a specific promise of continued employment. The fact that Kraus had a meeting with Nash in which they planned the training schedule for 1994 does not constitute a specific employment promise. For the foregoing reasons Defendants' summary judgment motion on the breach of contract and promissory estoppel claims by Allen and Kraus should be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

1) Defendants' motion for summary judgment as to Allen's age discrimination claims be GRANTED.

2) Defendants' motion for summary judgment as to Allen's race discrimination claims be GRANTED.

3) Defendants' motion for summary judgment as to Kraus's sex discrimination claims be GRANTED.

4) Defendants' motion for summary judgment as to Allen's breach of contract and promissory estoppel claims be GRANTED.

5) Defendants' motion for summary judgment as to Kraus's breach of contract and promissory estoppel claims be GRANTED.

Date: 1–10–96.