RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION:  2001 FED App. 0416P (6th Cir.)
File Name:  01a0416p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

THOMAS ULLMO, JACQUELINE
ULLMO, and JASON ULLMO,
by and through his parents
and legal guardians, Thomas
and Jacqueline Ullmo,
     *Plaintiffs-Appellants,*

No. 00-3946

*v.*

GILMOUR ACADEMY,
     *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-02258—Patricia A. Gaughan, District Judge.

Argued:  October 24, 2001

Decided and Filed:  December 7, 2001

Before:  BOGGS and GILMAN, Circuit Judges; QUIST,
District Judge.[*]

---

[*] The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

1

———————————

**COUNSEL**

———————————

**ARGUED:** Stephen O. Walker, Beachwood, Ohio, for Appellants. Gregory V. Mersol, BAKER & HOSTETLER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Stephen O. Walker, Beachwood, Ohio, for Appellants. Gregory V. Mersol, Thomas J. Piatak, BAKER & HOSTETLER, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge. Thomas and Jacqueline Ullmo brought suit in state court against Gilmour Academy, alleging breach of contract, fraud, and a violation of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1491. They based their claims upon Gilmour's alleged failure to provide their son, Jason, with an education designed to help him overcome his learning disability. After removing the case to federal district court, Gilmour filed two successive motions for summary judgment based upon different aspects of the Ullmos' claims. The district court granted both motions, resulting in the dismissal of the Ullmos' complaint. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

**A. Factual background**

Gilmour is a private Catholic elementary and secondary school located in Gates Mills, Ohio. Jason attended first grade at Gilmour, during which time he was diagnosed with deafness in his left ear. His hearing impairment made it difficult for him to communicate with his first-grade teacher. Convinced that the situation at Gilmour would not improve,

"animus" toward him. Such a conclusory statement does not establish bias for the purposes of a motion to recuse. *General Aviation, Inc.*, 915 F.2d at 1043 ("Conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification.") (internal quotation marks omitted). Finally, an affidavit filed under § 144 must be "accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144. No such certificate accompanied the affidavit filed by the Ullmos. Based upon these factors, we conclude that the cumulative effect of the district court's denial of the Ullmos' motion to recuse and its other pretrial rulings did not deprive the Ullmos of due process.

**III. CONCLUSION**

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

>   2.  *The Ullmos failed to properly support their motion to recuse and offer no evidence that bias influenced any of the district judge's pretrial rulings*

According to the Ullmos, the district judge was biased against their counsel. They insist that this bias influenced district judge's pretrial rulings. These rulings, including the district judge's refusal to recuse herself from this case, allegedly denied the Ullmos the due process of law.

The Ullmos, however, fail to show that the district court abused its discretion in denying their motion for recusal. A motion for recusal based upon personal bias is governed by 28 U.S.C. § 144, which makes recusal mandatory where a party files a "sufficient" affidavit describing the judge's "personal bias or prejudice." The affidavit offered in support of the Ullmos' motion for recusal was not sufficient for the purposes of § 144.

To warrant recusal under § 144, an affidavit must "allege[] facts which a reasonable person would believe would indicate a judge has a personal bias against the moving party." *General Aviation, Inc. v. Cessna Aircraft, Co.*, 915 F.2d 1038, 1043 (6th Cir. 1990). The alleged facts, moreover, must relate to "extrajudicial conduct rather than . . . judicial conduct." *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (internal quotation marks omitted). In other words, the affidavit must allege facts showing "a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law." *Id.* at 1090 (internal quotation marks omitted).

The affidavit offered in support of the Ullmos' motion to recuse, however, seeks to establish bias based solely upon the district judge's pretrial rulings. No evidence was presented of any extrajudicial bias. Furthermore, the only mention of personal bias in the affidavit is the statement by the Ullmos' counsel that he "perceived" that the district judge had an

the Ullmos enrolled Jason at Ratner Montessori School after he completed the first grade.

Jason was subsequently diagnosed with a learning disability involving written expression. Because of this learning disability, Ratner provided Jason with an individualized learning disability education. He responded well to the individualized program, progressing from second through sixth grade at Ratner. Jason, however, desired to return to Gilmour for the seventh grade, telling his parents that he "wanted to be part of the Gilmour family."

Several months before Jason's seventh-grade year, Jacqueline Ullmo met with Robert Isabella, the Director of Admissions at Gilmour, to discuss Jason's possible return. She claims that Isabella assured her "that it didn't make any difference that Jason had learning disabilities . . . ." Isabella also allegedly told her that Gilmour maintained a "very nurturing environment" and that it "would work with Jason."

Jason subsequently returned to Gilmour for the seventh grade, and continued his schooling there through the twelfth grade. Each year that Jason attended Gilmour, the Ullmos signed an Enrollment Agreement that obligated students and their parents to abide by the rules set forth in Gilmour's Student and Parent Handbook. The Handbook contains policies regarding academics, discipline, and related matters. It also includes a section titled "Philosophy," which states:

>   As a premier independent Catholic preparatory school (preschool through high school), Gilmour Academy models itself on the family and takes as its mission the search for excellence in each person.

>   Gilmour teachers mirror the Holy Cross tradition as they work for the full development of their students, in and out of the classroom, respecting pupils' differing abilities and styles of learning.

After returning to Gilmour, Jason struggled academically. He routinely failed to complete assignments and earned

below-average grades. The Ullmos attributed Jason's difficulties to Gilmour's failure to adequately accommodate his learning disability. They were particularly dissatisfied with Gilmour's refusal to adopt the recommendations made by Jason's psychologist, who suggested, among other things, that Jason be allowed to take tests orally and be given more time to complete his assignments. But the Ullmos nevertheless had Jason return to Gilmour each year. Despite his consistently poor academic performance, Jason graduated from Gilmour in 1998.

## B. Procedural background

The Ullmos brought suit in state court against Gilmour in September of 1998. Suing on behalf of themselves and Jason, they sought damages for breach of contract, fraud, and a violation of the IDEA. They maintained that Gilmour breached its promise to "work for the development" of its students and to respect students' "differing abilities and styles of learning" as set forth in the Handbook. The Ullmos also contended that this promise was fraudulent. Finally, the Ullmos alleged that Gilmour violated the IDEA by failing to help Jason overcome his learning disability.

Gilmour removed the Ullmos' suit to the United States District Court for the Northern District of Ohio. A timely motion for summary judgment was filed by Gilmour on the Ullmos' breach of contract and fraud claims, which the district court granted. After the deadline for filing dispositive motions had passed, the district court granted leave for Gilmour to also move for summary judgment on the Ullmos' remaining claim under the IDEA.

The Ullmos responded to Gilmour's second motion for summary judgment by filing a motion for the district judge to recuse herself. They alleged that the district judge's decision to grant Gilmour leave to file its late motion for summary judgment, as well as the judge's other pretrial rulings, evidenced her bias against their counsel. In addition to their motion to recuse, the Ullmos filed a motion requesting that the district court vacate its earlier order granting summary

for summary judgment on their IDEA claim. They maintain that Gilmour purposely delayed filing its motion for summary judgment on their IDEA claim so that it could first obtain a federal judgment on their state-law claims. According to the Ullmos, Rule 11 of the Federal Rules of Civil Procedure prohibits Gilmour from "manipulating the judicial process to impose federal standards of review on entirely State Court claims."

The Ullmos, however, offer no authority for the proposition that Rule 11 obligated Gilmour to first seek summary judgment on their IDEA claim. Moreover, as the district court recognized, "there is no indication that Gilmour's failure to initially move for summary judgment [on the IDEA claim] was the result of foul play." The sequence of Gilmour's motions for summary judgment, therefore, does not entitle the Ullmos to pursue their breach of contract and fraud claims in state court. *See Enlow v. Tishomingo Cty., Miss.*, 962 F.2d 501, 507 (6th Cir. 1992) ("Such a determination [to allow a successive motion for summary judgment], particularly regarding questions of the timing and sequence of motions in the district court, best lies at the district court's discretion.").

Accordingly, we conclude that the district court did not err in denying the Ullmos' motion to vacate and remand.

## C. The cumulative effect of the district judge's pretrial rulings and her refusal to recuse herself from this case did not deprive the Ullmos of due process

### 1. *Standard of review*

The Ullmos base their due process challenge primarily upon the district judge's denial of their motion to recuse. This court "reviews decisions denying . . . motions to recuse under the abuse of discretion standard." *United States v. Hartsel*, 199 F.3d 812, 815 (6th Cir. 1999). An abuse of discretion is found where this court is left with the "definite and firm conviction that the trial court committed a clear error of

The Ullmos also based their motion to vacate and remand on Gilmour's alleged violation of Rule 11 of the Federal Rules of Civil Procedure. This court applies "an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

> 2. *Gilmour was fully within its rights to remove this case to federal court and to seek summary judgment on the Ullmos' state-law claims before their IDEA claim*

The Ullmos first contend that the district court should have granted their motion to vacate and remand because Gilmour improperly removed this case to federal court. They point out that the IDEA authorizes suits in both state and federal court. Because they filed suit in state court, the Ullmos insist that the district court lacked jurisdiction over their IDEA claim.

This argument is without merit. Removal is proper where a complaint raises a claim that is within the jurisdiction of the federal courts. 28 U.S.C. § 1441(a). The IDEA is a federal statute. Any claim arising under the IDEA is therefore subject to the jurisdiction of the district court. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Although the IDEA also permits suits to be brought in state court, "the fact that the IDEA provides the plaintiff with the choice of state or federal court does not preclude the removal of the resulting action to federal court." *Fayetteville Perry Local Sch. Dist. v. Reckers*, 892 F. Supp. 193, 197 (S.D. Ohio 1995); *see also Dorsey v. City of Detroit*, 858 F.2d 338, 341 (6th Cir. 1988) ("The weight of judicial authority supports the conclusion that a Congressional grant of concurrent jurisdiction in a statute does not imply that removal is prohibited.") (internal quotation marks omitted).

The Ullmos next argue that the district court should have granted their motion to vacate and remand because Gilmour allegedly engaged in forum shopping by filing its motion for summary judgment on their state-law claims before moving

judgment on their breach of contract and fraud claims and remand those claims to state court. After denying the Ullmos' motions, the district court granted summary judgment to Gilmour on the Ullmos' IDEA claim.

The Ullmos then filed this timely appeal. They contend that the district court erred in granting summary judgment to Gilmour on their breach of contract, fraud, and IDEA claims. Furthermore, they argue that the district court erred in denying their motion to vacate the grant of summary judgment on their state-law claims and to remand those claims to state court. Finally, the Ullmos claim that the cumulative effect of the district court's denial of their motion to recuse and its various other pretrial rulings deprived them of the due process of law.

## II. ANALYSIS

### A. Gilmour was entitled to summary judgment on the Ullmos' breach of contract, fraud, and IDEA claims

#### 1. Standard of review

This court reviews de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only where there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### 2. The "Philosophy" section of Gilmour's Handbook is too general and aspirational to constitute an enforceable promise

In suing for breach of contract, the Ullmos did not allege that Gilmour totally failed to provide educational services as promised to them in the Enrollment Agreement. They instead sought to enforce the language contained in the Philosophy section of the Handbook, which states that "Gilmour teachers mirror the Holy Cross tradition as they work for the full development of their students, in and out of the classroom, respecting pupils' differing abilities and styles of learning." The Handbook further provides that Gilmour "models itself on the family and takes as its mission the search for excellence in each person."

Nowhere in the Philosophy section, however, is there a description of the faculty's teaching methods or any promise as to the manner in which the faculty will accommodate a student's learning disabilities. No standards are set forth to determine whether Gilmour has worked for the full development of its students or respected its students' differing abilities. Instead, the section simply assures students and parents that Gilmour's mission is to search for excellence in each person. The language in the Philosophy section, therefore, sets forth only a general statement of Gilmour's ideals.

Indefinite and aspirational language does not constitute an enforceable promise under Ohio law. The Ohio Supreme Court has made clear that vague language will not warrant judicial enforcement, stating that "[a] court cannot enforce a contract unless it can determine what it is." *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997) (holding that the trial court erred in enforcing an ambiguous settlement agreement) (internal quotation marks omitted). In addition, a breach of contract claim will not arise from the failure to fulfill a statement of goals or ideals. *Allen v. Ethicon, Inc.*, 919 F. Supp. 1093, 1100 (S.D. Ohio 1996). In *Allen*, two discharged employees sued their former employer for breach of contract,

142 F.3d 776, 784 (5th Cir. 1998) (quoting *Gadsby v. Grasmick*, 109 F.3d 940, 955 (4th Cir. 1997)).

In the present action, the Ullmos sued Gilmour under the IDEA. They argue that Gilmour served as a LEA because it received both federal and state education funds. But the Ullmos acknowledge that Gilmour received public funds only for general education purposes, as opposed to funds provided under the IDEA for disability education. Furthermore, the IDEA defines a LEA as a public administrative body charged with overseeing public schools. 20 U.S.C. § 1401(a)(15) (defining a LEA as "a public board of education or other public authority legally constituted . . . for either administrative control or direction of, or to provide a service function for, public elementary or secondary schools . . . .").

The Ullmos concede that Gilmour is a private institution. Gilmour, moreover, is a school rather than an administrative body. Accordingly, the IDEA's definition of a LEA leaves "no room" for Gilmour to fit within the statutory term. *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 172 (2d Cir. 2001) (holding that a private school is not a LEA because the IDEA defines a LEA as a public administrative body). Gilmour is therefore not subject to liability under the IDEA.

For all of the reasons set forth above, we hold that the district court did not err in granting summary judgment to Gilmour on the Ullmos' IDEA claim.

### B. The district court did not err in denying the Ullmos' motion to vacate the grant of summary judgment on their breach of contract and fraud claims, and to remand those claims to state court

#### 1. Standard of review

The Ullmos' motion to vacate and remand was a challenge, in part, to the district court's subject matter jurisdiction over this case. This court reviews "de novo the existence of subject matter jurisdiction as a question of law . . . ." *Wright v. General Motors, Corp.*, 262 F.3d 610, 613 (6th Cir. 2001).

of education services." *Wise v. Ohio Dep't of Educ.*, 80 F.3d 177, 181 (6th Cir. 1996). Most notably, the IDEA requires states to provide "[a] free appropriate public education . . . to all children with disabilities residing in the State . . . ." 20 U.S.C. § 1412(a)(1).

Under the IDEA, the responsibility for ensuring that disabled students receive a free appropriate public education lies with the state educational agency (SEA). 20 U.S.C. § 1412(a)(11) (recognizing the SEA as the primary authority for establishing a state's compliance with the IDEA). The SEA distributes a substantial portion of the state's IDEA funds to local educational agencies (LEAs), which directly provide disabled students with a free appropriate public education. 20 U.S.C. § 1411(g)(1) (establishing the LEAs' right to at least 75% of the IDEA funds paid to the state).

Parents of a disabled student may challenge whether their child is receiving the free appropriate public education required under the IDEA. 20 U.S.C. § 1415(b)(6) (requiring the SEA and the LEA to provide an opportunity for the parents of a disabled child to present complaints regarding "the provision of a free appropriate public education to such child"). To do so, the parents must file a complaint with either the SEA or the LEA, which is then obligated to conduct a hearing regarding the parents' complaint. 20 U.S.C. § 1415(f) (providing that parents who file a complaint regarding their disabled child's education are entitled to an impartial due process hearing).

The IDEA provides that any person "aggrieved" by the final decision reached at the conclusion of this administrative process may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(a). Although the IDEA does not specifically name the party against whom such an action may be brought, the "'language and structure of [the] IDEA suggest that either or both entities [the SEA or LEA] may be held liable for the failure to provide a free appropriate public education . . . .'" *St. Tammany Parish Sch. Bd. v. Louisiana*,

alleging that statements contained in the employer's credo constituted a promise of employment. The credo stated, among other things, that the employer was "responsible" to its employees and that employees "must have a sense of security in their jobs." *Id.* at 1097. But the district court concluded that, rather than a promise of employment, this language was "an articulation of [the employer's] aspirational goals and ideals." *Id.* at 1100.

The Ullmos insist that the *Allen* decision is distinguishable from the present case, arguing that "Ohio is an employment at will state and as long as the firing was not discriminatory, the language . . . in a credo . . . was, in reality, irrelevant." This argument lacks merit, however, because the court in *Allen* had to decide whether the language in the credo created an enforceable promise of employment so as to establish an exception to Ohio's default rule of employment at will. Thus, the language in the credo was at issue in *Allen*.

The Ullmos further contend that, even if *Allen* is persuasive authority, the language in the Philosophy section is not aspirational. They rely upon the testimony of Robert Lavalle, the Headmaster at Gilmour, to support their argument. Lavalle testified during his deposition that Gilmour "wanted" and "expected" parents to rely upon the representations in the Handbook. He also stated that Gilmour's failure to provide the services promised in the Handbook would constitute a breach of contract. Lavalle, however, denied that the Philosophy section contained any specific promises of educational services. He specifically stated that the Philosophy section "puts forth the ideals which the [Gilmour] Academy sets forth as to that which it aspires."

Based on the above, we conclude that the district court did not err in granting summary judgment to Gilmour on the Ullmos' breach of contract claim.

3.    *The Ullmos failed to allege a material representation*
      *of fact sufficient to sustain a claim for fraud*

The language contained in the Philosophy section of the Handbook is also the basis for the Ullmos' fraud claim. They alleged that they reasonably relied upon the promises made in the Philosophy section; namely, that Gilmour would work to fully develop its students and would respect its students' differing abilities and styles of learning. According to the Ullmos, Gilmour neither fulfilled these promises nor ever had any intention of doing so.

But the Ullmos failed to allege that Gilmour made a representation of fact sufficient to give rise to a fraud claim under Ohio law. *Burr v. Stark County Bd. of Comm'rs*, 491 N.E.2d 1101, 1105 (Ohio 1986) (Syllabus ¶ 2) (holding that "a representation . . . of fact" is the first element of a fraud claim). For the purposes of a fraud claim, a representation of fact must be definite. *Friesner v. Mid American Nat'l Bank & Trust Co.*, No. WD-88-67, 1989 WL 111756, at *5 (Ohio Ct. App. Sept. 29, 1989) (holding that a bank's promise not to foreclose on a delinquent loan if the plaintiff continued funding a corporation was "too vague and indefinite, as a matter of law, so as to amount to a fraudulent misrepresentation"); 37 Am. Jur. 2d *Fraud and Deceit* § 61 (2001) ("As a predicate for a fraud action, a representation must be definite; mere vague, general, or indefinite statements are insufficient.").

The language in the Philosophy section is indefinite. As explained in Part II.A.2. above, the Philosophy section promises no specific educational services. It instead sets forth an aspirational statement of Gilmour's goals. The language in the Philosophy section, therefore, contains no representation of fact sufficiently definite for a fraud claim.

Perhaps recognizing this, the Ullmos seek to broaden the scope of their fraud claim on appeal. They now contend that their fraud claim was based upon both the language in the Philosophy section and "similar oral representations." As support for their expanded claim, the Ullmos apparently seek to rely upon Admission Director Isabella's alleged assurances to Jacqueline Ullmo that "it didn't make any difference that Jason had learning disabilities" and that Gilmour "would work with Jason" in a "very nurturing environment."

The Ullmos' complaint, however, makes no mention of any oral representations concerning the nature or quality of Jason's education at Gilmour. Both Rule 9(b) of the Federal Rules of Civil Procedure and Rule 9(B) of the Ohio Rules of Civil Procedure require fraud to be pled with particularity. To satisfy this requirement, a "plaintiff must allege specifically times, places, [and] contents . . . of the underlying fraud." *Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992) (discussing the showing required to satisfy Federal Rule 9(b)); *Aluminum Line Prods. Co. v. Brad Smith Roofing Co.*, 671 N.E.2d 1343, 1351 (Ohio Ct. App. 1996) (stating that, in order to satisfy Ohio Rule 9(B), the complaint must "include the time, place and content of the false representation"). Because the Ullmos did not plead any fraudulent oral representations in their complaint, a claim for fraud based upon such representations is not properly before us.

The Ullmos, in any event, cannot recover for fraud based upon Isabella's alleged oral representations. Isabella's assurances that Gilmour would work with Jason and provide a nurturing environment are just as vague as the language contained in the Philosophy section of the Handbook. These statements, therefore, are too indefinite to constitute a representation of fact for purposes of a fraud claim.

For these reasons, we conclude that the district court did not err in granting summary judgment to Gilmour on the Ullmos' fraud claim.

4.    *Gilmour is not subject to liability under the IDEA*

The IDEA provides federal funds to help states educate disabled students. 20 U.S.C. § 1411 (authorizing grants to states to assist them in providing special education to students with disabilities). A state receiving funds under the IDEA "must abide by a host of regulations governing the provision