[Cite as *Lakeside Produce Distrib. v. Wirtz*, 2021-Ohio-505.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| LAKESIDE PRODUCE DISTRIBUTION, INC., ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 109460 |
| v. | : | |
| AMY WIRTZ, ET AL., | : | |
| Defendants-Appellees. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 25, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-919970

## *Appearances:*

Thrasher Dinsmore & Dolan, L.L.P., and Leo M. Spellacy, Jr., *for appellants*.

Gallagher Sharp L.L.P., Timothy T. Brick, and Lori E. Brown, *for appellees*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiffs-appellants, Terrence Granzier and Lakeside Produce Distribution, Inc. (collectively "plaintiffs"), appeal the dismissal of their refiled

complaint against defendants-appellees, Amy Wirtz and Wirtz Legal Solutions L.L.C. (collectively "Wirtz").  Lakeside claims the following error:

> The trial court erred in finding that the collaborative law agreement was not an enforceable contract and dismissing the complaint under Civ.R. 12(B)(6).

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 3} This breach-of-contract case arose as a result of divorce proceedings between Terrence Granzier ("Mr. Granzier") and his ex-wife ("Mrs. Granzier").  In an effort to terminate their marriage without litigation, Mr. and Mrs. Granzier opted to use the collaborative family law process set forth in R.C. 3105.41 et seq.  The collaborative law process requires that both parties be represented by counsel, who are retained solely for purposes of settlement negotiations and not for purposes of litigation.  Wirtz represented Mrs. Granzier.

{¶ 4} In October 2015, the Granziers entered into a "Collaborative Law Agreement" ("the Agreement") to negotiate a settlement of their divorce.  The Agreement contains the following clause: "We will work to protect the privacy, respect and dignity of all involved, including parties, attorneys and consultants." The final provision of the Agreement promises that "both parties and lawyers hereby pledge to comply with and to promote the spirit and written word of this document." (Collaborative Law Agreement attached to complaint p. 4.)

**{¶ 5}** The Granziers and their attorneys signed the Agreement. The Granziers also signed a separate addendum to the Agreement, which was not signed by counsel. The addendum states that one of the "possible benefits" of the Agreement is that "[a]ll information is shared fully in a private forum, on request of either party, and all negotiations take place directly, face-to-face." (Addendum to Collaborative Law Agreement attached to the complaint, p. 2.) Based on these agreements, Mr. Granzier believed that any information provided during the collaborative law process would remain confidential. (Complaint ¶ 17-19.)

**{¶ 6}** Mr. Granzier is the sole shareholder of Lakeside Produce Distribution, Inc. ("Lakeside"). Lakeside provides salad manufacturers with a year-round supply of bulk cabbage. Mr. Granzier was concerned that if news of his divorce became public, his competitors, particularly Cabbage, Inc., would use the information for their own advantage and "place doubts in the minds of Lakeside's growers and customers as to the Lakeside's liquidity." (Complaint ¶ 16.)

**{¶ 7}** Mr. Granzier discovered during the collaborative law process that Wirtz had shared information about the Granziers' divorce and Lakeside to members of Cabbage, Inc., with whom Wirtz shared office space. Consequently, in June 2018, plaintiffs filed a complaint against Wirtz, asserting claims of breach of contract, misappropriation of trade secrets, and intentional interference with business relationships. The complaint alleged, among other things, that Wirtz breached the Agreement by disclosing confidential information regarding Mr. Granzier's divorce

to Cabbage Inc. Wirtz filed a motion to dismiss. The trial court granted the motion to dismiss, in part, and dismissed the breach-of-contract claim.

{¶ 8} In order to immediately appeal the decision, plaintiffs voluntarily dismissed the complaint (i.e., the remaining claims for misappropriation of trade secrets and intentional inference with business relationships). Thereafter, plaintiffs refiled the complaint, alleging only the breach-of-contract claim. The refiled complaint alleged that Mr. Granzier informed Wirtz of the need for keeping his divorce confidential, particularly with regard to Lakeside's competitors, and that Wirtz confirmed that the communications would be kept secret. (Complaint ¶ 15.) The complaint further alleged that Wirtz disclosed confidential information concerning the Granzier's divorce to members of Cabbage, Inc. and that, based on information provided by Wirtz, Cabbage, Inc. told growers and customers that it was considering purchasing Lakeside. (Complaint ¶ 29, 33, 35.) Lakeside alleges that it lost business and profits as a result of these statements. (Complaint ¶ 47.)

{¶ 9} Wirtz again moved to dismiss the complaint, pursuant to Civ.R. 12(B)(6), claiming plaintiffs failed to state claim on which relief could be granted. Wirtz argued that (1) there was no enforceable confidentiality provision in the Agreement, and that (2) because Lakeside was not a party to the Agreement, it lacked standing to assert a breach-of-contract claim. The trial court agreed and dismissed the complaint. Plaintiffs now appeal the trial court's judgment.

## II. Law and Analysis

## A. Standard of Review

{¶ 10} The trial court dismissed the complaint pursuant to Civ.R. 12(B)(6). A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which relief can be granted "is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992), citing *Assn. for Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117, 537 N.E.2d 1292 (1989).

{¶ 11} A trial court's review of a Civ.R. 12(B)(6) motion to dismiss is limited to the four corners of the complaint along with any documents properly attached to, or incorporated within, the complaint. *Glazer v. Chase Home Fin. L.L.C.*, 8th Dist. Cuyahoga Nos. 99875 and 99736, 2013-Ohio-5589, ¶ 38. An appellate court reviews de novo a trial court's decision granting a motion to dismiss under Civ.R. 12(B)(6). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

{¶ 12} In our review of a Civ.R. 12(B)(6) motion to dismiss, we must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff. *Jenkins v. Cleveland*, 8th Dist. Cuyahoga No. 104768, 2017-Ohio-1054, ¶ 8, citing *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 6. For a party to ultimately prevail on the motion, it must appear from the face of the complaint that the plaintiff can prove no set of facts that

would justify a trial court granting relief. *Id.*, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

## B. Breach of Contract

{¶ 13} In the sole assignment of error, plaintiffs argue the trial court erred in dismissing the complaint for failure to state a claim on which relief could be granted. They contend the court erroneously concluded there was no enforceable confidentiality provision in the parties' agreement.

{¶ 14} To state a claim for breach of contract, the plaintiff must allege (1) the existence of a binding contract, (2) the nonbreaching party performed his or her contractual obligations, (3) the other party failed to fulfill its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages as a result of the breach. *Cynergies Consulting, Inc. v. Wheeler*, 8th Dist. Cuyahoga No. 90225, 2008-Ohio-3362, ¶ 15, citing *All Star Land Title Agency, Inc. v. Surewin Invest., Inc.*, 8th Dist. Cuyahoga No. 87569, 2006-Ohio-5729.

{¶ 15} The parties' Agreement and addendum were attached to the refiled complaint and incorporated therein. After reviewing the Agreement, the trial court concluded that the first element of a contract claim was not met because there was no binding confidentiality agreement. The trial court found that the language in the Agreement was too aspirational to constitute an enforceable agreement.

{¶ 16} To be enforceable, a contract must have an offer, acceptance, consideration, and a manifestation of mutual assent. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-298, 770 N.E.2d 58, ¶ 16. A valid offer, the acceptance of which

would create an enforceable contract, must contain terms that are "reasonably certain." Restatement of the Law 2d, Contracts, Section 33(1) (1981) ("Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain."); *Alligood v. Procter & Gamble Co.*, 72 Ohio App.3d 309, 311, 594 N.E.2d 668 (1st Dist.1991) (A valid contract must be specific as to its essential terms.).

{¶ 17} To prove the existence of a contract, the proponent of the contract must show that "both parties consented to the terms of the contract, that there was a 'meeting of the minds' of both parties, and that the terms of the contract are definite and certain." *Nilavar v. Osborn*, 137 Ohio App.3d 469, 484, 738 N.E.2d 1271 (2d Dist.2000), quoting *McSweeney v. Jackson*, 117 Ohio App.3d 623, 631, 691 N.E.2d 303 (4th Dist.1996).

{¶ 18} The terms of a contract are sufficiently certain if they "'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169, 464 N.E.2d 586 (8th Dist.1983), quoting Restatement of the Law 2d, Contracts, Section 33, at 92 (1981). *See also In re Estate of Bohl*, 2016-Ohio-637, 60 N.E.3d 511 (12th Dist.) ("An agreement is sufficiently certain for enforcement if it provides a basis for determining the existence of a breach and for giving an appropriate remedy.").

{¶ 19} As previously stated, the Agreement provided that the parties and their attorneys "will work to protect the privacy, respect and dignity of all involved, including parties, attorneys and consultants." The last provision of the Agreement

states that "[b]oth parties and lawyers hereby pledge to comply with and to promote the spirit and written word of this document."

**{¶ 20}** The trial court concluded that the privacy language in the Agreement was too general and aspirational to constitute an enforceable confidentiality provision. In reaching its conclusion, the trial court relied on *Ullmo v. Gilmour Academy*, 273 F.3d 671, 677 (6th Cir.2001).

**{¶ 21}** In *Ullmo*, the Sixth Circuit affirmed an order granting summary judgment in favor of a defendant-school on contract and fraud claims based on statements contained in the school's student/parent handbook. The school stated in the handbook that its mission was to "search for excellence in each person." It also stated that its teaching tradition involved "respecting pupils' differing abilities and styles of learning." *Id.* at 675. Parents of a student sued the school for breach of contract, alleging that it failed to effectively teach their child within his disabilities, as evidenced by his poor grades.

**{¶ 22}** In affirming the award of summary judgment in favor of the school, the Sixth Circuit noted that the handbook lacked any "description of the faculty's teaching methods or any promise as to the manner in which the faculty will accommodate a student's learning disabilities." *Id.* at 676. The court also found that "[n]o standards [we]re set forth to determine whether [the school] has worked for the full development of its students or respected its students' differing abilities." *Id.* The court concluded, therefore, that the language in the handbook promising to accommodate a student's learning disabilities was "aspirational in nature" and not

specific enough to create enforceable terms of a contract. *Id.* at 677. The court explained:

> Indefinite and aspirational language does not constitute an enforceable promise under Ohio law. The Ohio Supreme Court has made clear that vague language will not warrant judicial enforcement, stating that "[a] court cannot enforce a contract unless it can determine what it is."

*Id.*, quoting *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997). *See also Clayton v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 101854, 2015-Ohio-1547, ¶ 11 (holding that antidiscrimination and antiharassment provisions in an employee handbook did not create any contractual obligations or rights); *Pierce v. Bishop*, 4th Dist. Meigs No. 10CA6, 2011-Ohio-371, ¶ 13, 22 (noting that even though the existence of a duty for purposes of a negligence action could be found in the express or implied terms of a contract, such "general and aspirational" policies regarding employee safety were not sufficient to create a binding contract to establish a duty); *Sagonowski v. Andersons, Inc.*, 6th Dist. Lucas No. L-03-1168, 2005-Ohio-326, ¶ 51-55 (holding that an "Employee Bill of Rights" reflected "aspirational statements" and did not create specific contractual terms between the employer and employee); *Olive v. Columbia/HCA Healthcare Corp.*, 8th Dist. Cuyahoga Nos. 75249 and 76349, 2000 Ohio App. LEXIS 914 (Mar. 9, 2000) (concluding a hospital's "aspirational statement of policy that it would take corrective action in a uniform, consistent, and nondiscriminatory manner" was not sufficient to create a binding contract).

{¶ 23} Plaintiffs argue their Agreement provides a binding confidentiality agreement because it uses language such as "will" and "pledge," and contains specific and measurable commitments, such as "to protect the privacy, respect and dignity of all involved." Plaintiffs contend the words "will" and "pledge" are akin to the word "shall" and, therefore, implies an enforceable contractual duty. Plaintiffs cite *Smith v. Smith*, 2d Dist. Drake No. 09CA06, 2010-Ohio-31, and *Pike-Delta-York Edn. Assn. v. Howell*, Fulton C.P. No. 20182, 1980 WL 102275 (Dec. 4, 1980), to support their argument.

{¶ 24} In *Smith*, a former husband requested that his former wife be held in contempt of court for failing to comply with an obligation in the parties' separation agreement, which required her to pay an equal share of their child's college expenses. The wife testified that it was her intention to pay an equal share when she signed the separation agreement, but asserted that her intention was conditioned on her ability to pay her share of the expenses. Thus, the issue in the case was whether the separation agreement created an enforceable contractual obligation or whether it merely stated an aspirational goal.

{¶ 25} In finding that the wife's duty to pay an equal share of the child's college expenses was an enforceable contract provision, the court observed that the parties' agreement used the word "shall," and that the word "'[s]hall' is a word of obligation, not aspiration." *Id.* at ¶ 19. The wife's obligation under the agreement was also specific; her failure to pay half of the child's college expenses constituted a breach.

{¶ 26} In *Pike-Delta-York*, a teacher's union sought to enforce a provision of a collective bargaining agreement against a nonunion teacher to collect membership dues. The collective bargaining agreement stated, in relevant part, that "all certified non-administrative personnel are expected to join the (plaintiff) association * * * or pay a representation fee equal to such membership dues." The court compared this language with another provision that used the words "shall" and "will" and concluded that while the words "shall" and "will" established the existence of a mandatory contractual duty in the other provision, the word "expect" in the disputed provision did not create a contractual obligation. *Id.* The term "expect" anticipates some possible action sometime in the future, is not specific, and is, therefore, aspirational rather than a mandatory obligation.

{¶ 27} The Agreement in this case provides that the parties and their lawyers "will work to protect the privacy, respect and dignity of all involved." The Agreement does not specify how the parties' privacy will be protected. Nor does it say that the parties' privacy "shall" be protected. The Agreement does not specifically require that all communications shared in the collaborative process be kept confidential. Instead, the Agreement sets forth general ideals without any express confidentiality language. We, therefore, agree with the trial court that this language is aspirational in nature and does not create any specific contractual terms regarding confidentiality.

{¶ 28} Plaintiffs nevertheless contend the agreement is ambiguous and that parol evidence should have been considered to clarify the Agreement. They contend

the court should have considered Amy Wirtz's oral promises that the collaborative law process would be confidential.

{¶ 29} "The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements." *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996). Under the parol evidence rule, "'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 Williston on Contracts, Section 33:4, at 569-70 (4th Ed.1999).

{¶ 30} Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered to give effect to the parties' intentions. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987). But, when the terms in a contract are unambiguous, courts will not create a new contract by finding an intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246, 406, 374 N.E.2d 146 (1978)*.* A court may not put words into a contract that the parties themselves failed to include. *Porterfield v. Bruner Land Co.*, 7th Dist. Harrison No. 16 HA 0019, 2017-Ohio-9045, ¶ 16.

{¶ 31} Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.).

{¶ 32} The parties' Agreement is not ambiguous; it simply lacks a specific confidentiality provision. Furthermore, there are no special circumstances warranting the consideration of parol evidence since the plain language of the Agreement is clear and unambiguous. Therefore, the trial court properly concluded that the parol evidence rule prohibited it from considering contemporaneous oral agreements that may vary or contradict the terms of the written agreement.

{¶ 33} Still, plaintiffs argue the collaborative law process outlined in R.C. Chapter 3105, establishes the existence of a confidentiality provision in the parties' agreement. They contend the collaborative law process is another special circumstance warranting consideration of parol evidence.

{¶ 34} R.C. 3105.48 provides that collaborative family-law communications are confidential "to the extent agreed by the parties in a signed record or as provided by the law of this state." R.C. 3105.43 further provides a list of mandatory provisions to be included in collaborative law agreements, but a confidentiality provision is not required. Therefore, the collaborative law process was not a special circumstance warranting the consideration of parol evidence for purposes of construing the parties' agreement.

**{¶ 35}** We sympathize with the plaintiffs' grievances against Wirtz. However, after construing the reasonable inferences in plaintiffs' favor and reviewing the plain and unambiguous language of the parties' agreement, we find no set of facts entitling them to relief. Therefore, the sole assignment of error is overruled.

**{¶ 36}** The trial court's judgment is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
MARY EILEEN KILBANE, J., CONCUR