NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0148n.06
Filed: February 19, 2009

No. 07-2242

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TAYLOR ACQUISITIONS, L.L.C., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CITY OF TAYLOR;  CAMERON G. PRIEBE, | ) | **O P I N I O N** |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    McKEAGUE and GRIFFIN, Circuit Judges; and WEBER, District Judge.[*]

**McKEAGUE, Circuit Judge.** Plaintiff Taylor Acquisitions, LLC, sought to build a residential condominium development in the City of Taylor (the "City"). It entered into an agreement with the City to purchase City-owned property for the development. It also expended considerable amounts of time and money meeting with City officials and preparing and revising the required site plans for the project. Just as everything was about finalized, City residents elected a new mayor, and the progress on the development screeched to a halt. The City Council tabled a vote on the ordinances necessary to approve the development, and never approved the final site plans for the project. According to the mayor, the project was "dead."

_____

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

Plaintiff then sued the City and the mayor, Cameron G. Priebe ("Defendants"), in federal district court for violation of its rights to procedural and substantive due process and equal protection. The district court granted Defendants' motion to dismiss as to the due process claims. Following discovery, it also granted Defendants' motion for summary judgment on the remaining equal protection claim. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual Background

In December 2003, Plaintiff and City officials began discussing the possibility of building a 240-unit residential condominium development called "The Enclaves" at Racho Road and Superior Parkway, located near the Southland Mall in the City of Taylor. The proposed location consisted of approximately thirty-one acres and was comprised of thirteen parcels, six of which were owned by the City.

Plaintiff met with City officials several times after the initial meeting. According to Plaintiff, both parties contemplated that 1) the City would sell the six City-owned parcels to Plaintiff; 2) the City would rezone the entire property from commercial to residential and amend the City's Master Land Use Plan; 3) Plaintiff and the City would enter into a Brownfield Development Agreement for the property[1]; and 4) the City would approve the final site plans for the project. In reliance on this

_____

[1]According to Plaintiff's complaint, the City established the Brownfield Redevelopment Authority in 1996. The City developed a Brownfield Plan to "promote the redevelopment of environmentally distressed, functionally obsolete and blighted properties" located within the City. Compl. ¶ 6, J.A. at 15; *see also* J.A. at 48. The Brownfield Plan states that "[p]roperties will be continually added to the Brownfield Plan as new Brownfield projects are developed." J.A. at 48. Brownfield Plans and any amendments must be submitted to the City Council for approval. Property

mutual understanding, Plaintiff alleges that it invested significant amounts of money and time in developing the necessary plans for the project.

On September 20, 2005, the City Council voted to approve a Brownfield Development Agreement and a purchase agreement for the six City-owned parcels. The purchase price of the six parcels was $1.5 million. In accordance with the purchase agreement, Plaintiff submitted a $50,000 deposit to the City's escrow agent. Plaintiff also alleges that it entered into purchase agreements with the owners of the seven privately-owned parcels.

At the November 1, 2005 City Council hearing, the City Council voted to approve the amendment that added "The Enclaves" to the Brownfield Plan. It also voted to approve the first reading of an ordinance to amend the City's Master Land Use Plan. Finally, the City Council voted to approve the first reading of a zoning ordinance rezoning the thirteen parcels needed for Plaintiff's project from "Regional Business" to "Townhouse Residential/Planned Unit Development." Final approval of the amendment to the Master Land Use Plan and the zoning ordinance, as well as the final site plans for the development, was scheduled for the City Council meeting on November 15.

Meanwhile, on November 8, 2005, Defendant Cameron G. Priebe defeated the City's incumbent Mayor Gregory Pitoniak. Three incumbent City Council members were also defeated. Plaintiff alleges that, while Priebe was running for mayor, he had attended meetings and disrupted proceedings related to Plaintiff's project. During that time, Plaintiff claims Priebe "demonstrated an inappropriate and unjustified animosity toward the project." Compl. ¶ 82, J.A. at 32.

---

approved as part of the Brownfield Plan receives several incentives involving taxes and financing.

Instead of voting on final approval of Plaintiff's site plans and approving the second readings of the ordinances to amend the City's Master Land Use Plan and rezone the property at the November 15 meeting, the City Council decided to table the issues until the following meeting on December 6. However, on December 1, Plaintiff received a letter from counsel for the City stating that the purchase agreement for the City's six parcels of land "is hereby terminated effective immediately." Compl. ¶ 88, J.A. at 33-34; J.A. at 166. The letter also stated that Plaintiff's $50,000 deposit would be refunded with interest. Plaintiff's project was not on the agenda for the December 6 City Council meeting, and the City Council did not hold a vote for final approval of the project. Mayor Priebe allegedly advised those in attendance that the project was "dead."

**B. Procedural History**

On February 14, 2006, Plaintiff filed a complaint against the City of Taylor and Mayor Priebe in the United States District Court for the Eastern District of Michigan. Pursuant to 42 U.S.C. § 1983, Plaintiff alleged violation of its rights to substantive and procedural due process and equal protection. The complaint sought damages as well as injunctive relief.

Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After a hearing and supplemental briefing, the district court granted the motion to dismiss on the procedural and substantive due process claims. *Taylor Acquisitions, LLC v. City of Taylor*, No. 06-10650, 2006 WL 3085394, at *1 (E.D. Mich. Oct. 27, 2006). It denied the motion, however, with respect to Plaintiff's equal protection claim. *Id.*

After discovery was completed, Plaintiff and Defendants both filed motions for summary judgment on the equal protection claim. Four days after the hearing on the motions for summary

judgment, plaintiff filed an emergency motion requesting leave to supplement its summary judgment pleadings. It sought to include as exhibits documents that had been recently produced by Defendants in accordance with Plaintiff's successful motion to compel. The district court denied the motion, concluding that Plaintiff had not sought the required continuance under Rule 56(f) of the Federal Rules of Civil Procedure. *Taylor Acquisitions, LLC v. City of Taylor*, No. 06-10650, 2007 WL 2827870, at *2 (E.D. Mich. Sept. 27, 2007). The district court then granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. *Id.* Plaintiff timely appealed the final order of the district court.

## II. DISCUSSION

### A. Motion to Dismiss

Plaintiff first contends that the district court erred when it granted Defendants' motion to dismiss on Plaintiff's due process claims. Whether the district court properly dismissed these claims pursuant to Rule 12(b)(6) is a question of law, which we review *de novo*. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). We must construe the complaint in the light most favorable to Plaintiff, accept all well-pleaded factual allegations as true, and determine whether Plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle it to relief. *Id.* Yet, to survive a motion to dismiss, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* While the factual allegations in the complaint need not be detailed, they "must be enough to raise a right to relief above the speculative

level"—they must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). Finally, we may affirm the district court's dismissal of Plaintiff's claims on any grounds, including those not relied upon by the district court. *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

### 1. Procedural Due Process Claim

The Fourteenth Amendment forbids a state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). To establish a procedural due process violation, Plaintiff must demonstrate that 1) it possessed a constitutionally protected property or liberty interest; 2) it was deprived of that interest; and 3) the state did not afford it adequate procedural rights prior to depriving it of that interest. *See, e.g.*, *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Plaintiff first argues that it had a protected property interest. Property interests are not defined by the Constitution. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Rather, they are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Id.* An abstract need or unilateral expectation is insufficient to create a constitutionally protected property interest; a person must have a "legitimate claim of entitlement." *Roth*, 408 U.S. at 577.

Here, Plaintiff argues that it had a property interest in the six City-owned parcels, for which it executed a purchase agreement with the City.[2] Specifically, it challenges the district court's conclusion that a purchase agreement does not convey any protected property rights. In reaching this conclusion, the district court relied heavily on *Bryan v. City of Madison*, 213 F.3d 267, 275 (5th Cir. 2000). In that case, the Fifth Circuit held that under Mississippi law, a purchase agreement does not convey a property right to develop apartments on a piece of land. *Id.* Rather, the interest conferred by a purchase agreement is "[m]erely a right to get the down payment back if the seller does not make good title." *Id.* at 276. Such an interest "does not give one the right to enter the land, to exclude others from the land, or to build anything on the land." *Id.* As a result, the plaintiff in *Bryan* was unable to establish that the city had deprived him of a property interest when it prevented him from building his proposed development on the land. *Id.* Relying upon *Bryan*, the district court in this case concluded that Plaintiff did not have a protected property interest because the purchase agreement did not convey any rights. *Taylor*, 2006 WL 3085394, at *3.

Although we question whether *Bryan* stands for the proposition that a purchase agreement does not convey any property rights at all, neither the parties nor we have been able to find any Michigan cases to the contrary. Under Michigan law, it is well-settled that the execution of a land

---

[2]Plaintiff also argues that it had a property interest in the seven privately-owned parcels. The complaint states that, in reliance on the City's representations, Plaintiff began to enter into purchase agreements with and paid deposits to the owners of the seven privately-owned parcels. However, the complaint does not allege that Plaintiff had closed on or owned any of these parcels. Regardless, as discussed below, any property interest Plaintiff did possess did not grant it the right to develop the property into condominiums. And Plaintiff does not allege that the City deprived it of the property, by terminating the private purchase agreements or otherwise.

contract[3] operates as an equitable conversion: "[a] vendee in a land contract is vested with the equitable title in the land, and the legal title remains in the vendor as security for the payment of the purchase price." *Charter Twp. of Pittsfield v. City of Saline*, 302 N.W.2d 608, 609-10 (Mich. Ct. App. 1981); *see also Gilford v. Watkins*, 70 N.W.2d 695, 697 (Mich. 1955); 1 JOHN G. CAMERON, MICHIGAN REAL PROPERTY LAW: PRINCIPLES AND COMMENTARY § 16.3 (3d ed. 2005). But there is a dearth of case law when it comes to the extent of the interest, if any, conveyed by a purchase agreement, or what Michigan courts sometimes refer to as a "contract for the sale of land," *see Zurcher v. Herveat*, 605 N.W.2d 329, 341 (Mich. Ct. App. 1999). Even this court has noted that, although "[t]he execution of a land contract implicates the Doctrine of Equitable Conversion" under Michigan law, "[t]here is no such doctrine applicable to purchase agreements." *Wasik v. Adams*, No. 90-2089, 1991 WL 270093, at *3 (6th Cir. Dec. 13, 1991).

Ultimately, however, even assuming that the purchase agreement granted Plaintiff a property interest, and even if the City's termination of the agreement amounted to a deprivation of that interest, Plaintiff cannot establish the third prong of a procedural due process violation: that it did not receive adequate procedural protections. This court has held that "a state breach of contract action may . . . provide an adequate remedy for some deprivations of a contractually created property interest." *Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1273 (6th Cir. 1988). Indeed, "it is neither

---

[3]Under Michigan law, a land contract is an agreement "for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer." *Zurcher v. Herveat*, 605 N.W.2d 329, 341 (Mich. Ct. App. 1999) (citing 1 JOHN G. CAMERON, MICHIGAN REAL PROPERTY LAW: PRINCIPLES AND COMMENTARY § 16.1 (2d ed. 1993)).

workable nor within the intent of section 1983 to convert every breach of contract claim against a state into a federal claim." *Id.* (quoting *San Bernardino Physicians' Servs. Med. Group, Inc. v. San Bernardino County*, 825 F.2d 1404, 1408 (9th Cir. 1987)). The *Ramsey* court explained that "[a] state breach of contract action is most clearly an adequate remedy for a property deprivation when the only basis for federal jurisdiction is that a state actor is one of the contracting parties." *Id.*

The City's termination of the purchase agreement in this case falls within the category of cases that would most appropriately be remedied by a state breach of contract action. Any property interest could have only arisen out of the purchase agreement itself; the only difference between this case and any other garden-variety breach of contract case is that the City happened to be one of the contracting parties. Further, the purchase agreement between Plaintiff and the City explicitly contemplated breach by either party and provided for liquidated damages in the event of breach. Because a breach of contract action would be an adequate procedural protection for the City's termination of the purchase agreement, Plaintiff's complaint failed to set forth a claim for violation of procedural due process on the basis of any equitable interest created by the purchase agreement.

Moreover, the purchase agreement did not grant Plaintiff a property interest in building the proposed condominium development. Insofar as Plaintiff argues that it should have been permitted to *develop* the property, neither the purchase agreement nor any equitable interest that could have vested in it as a result granted it any such right. *See Bryan*, 213 F.3d at 276.

Plaintiff also cannot claim a property interest in a residential zoning classification for its development. Plaintiff argues that the facts of this case are similar to those of *Nasierowski Bros. Investment Co. v. City of Sterling Heights*, 949 F.2d 890 (6th Cir. 1991), in which this court held that

the plaintiff possessed a property interest in the original zoning classification in effect before the property was subsequently rezoned. *Id.* at 897. Unlike the developer in *Nasierowski*, however, Plaintiff never owned the property for which he claimed a particular zoning classification.[4] And, more importantly, at all relevant times the property Plaintiff sought was zoned as commercial; it was never zoned as residential, Plaintiff's desired zoning classification. Thus, Plaintiff had no legitimate claim of entitlement to its desired zoning classification.

Finally, Plaintiff did not have a property interest in the City Council's approval of the zoning ordinance, the amendment to the City's Master Land Use Plan, or approval of the final site plans. A person cannot have a property interest in a procedure itself. *Richardson v. Twp. of Brady*, 218 F.3d 508, 518 (6th Cir. 2000). In addition, a property interest cannot arise where a decisionmaker's power is wholly discretionary. *See McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 330 (6th Cir. 2006); *see also Richardson*, 218 F.3d at 517; *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). Here, the City Council had discretion to "deny, approve, or approve with conditions [Plaintiff's] request for PUD [Planned Unit Development] District classification."[5] Taylor Municipal Code, Art. 32.00, Section 32.03(2)(A)(7),

_____

[4]Because he did not own the property, Plaintiff also did not "actively pursue[ ] and complete[ ] a course of action of an inarguably substantial character to construct [the] development on the property" before the property was rezoned, as the plaintiff in *Nasierowski* had done. *Nasierowski*, 949 F.2d at 897; *see also City of Lansing v. Dawley*, 225 N.W. 500, 500 (Mich. 1929) (holding that permit holder acquired no vested right to erect building in violation of subsequent zoning ordinance where he had done nothing toward construction of the building).

[5]In fact, the City Council could not approve the PUD classification until the proposed development complied with the City's Master Land Use Plan. Taylor Municipal Code, Appendix A, Art. 32.00, Section 32.02(1)(A)(4), J.A. at 418.

J.A. at 426. And although the City had completed first readings of the ordinances to amend the

Master Land Use Plan and rezone the thirteen parcels of land, it had not finally approved these

ordinances.[6] Moreover, Plaintiff's argument that the City Council was required to enact the

ordinances simply because it had completed first readings of them is at odds with Michigan law,

which requires cities to provide for the initial publication of *all* ordinances before they can become

operative.[7] *See* MICH. COMP. LAWS § 117.3(k). Finally, Plaintiff points to no provision that limited

the City Council's discretion in approving or denying its final site plans.[8] Given the multiple steps

necessary to reach final approval of the project—and the City Council's discretion at every turn—we

conclude that Plaintiff did not have a legitimate claim of entitlement to develop the property.

Finding that Plaintiff failed to state a procedural due process claim on the basis of a property

interest, we now turn to Plaintiff's argument that Defendants deprived it of a liberty interest. A

liberty interest refers to more than just freedom from bodily restraint. *Roth*, 408 U.S. at 572. It also

refers to "the right of the individual . . . to engage in any of the common occupations of life." *Id.*

(quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)); *see also Conn v. Gabbert*, 526 U.S. 286,

292 (1999) (noting that "the liberty component of the . . . Due Process Clause includes some

---

[6]Under the City Charter, "[n]o ordinance shall be passed at the same meeting at which it is introduced." Taylor City Charter, Chapter VII, Section 7.3(c).

[7]Plaintiff further argues that, once the first readings were completed, Michigan law required the City Council to vote on the zoning ordinance. *See* MICH. COMP. LAWS § 125.3401(5). Even assuming that is true, the City Council still would have had the discretion to adopt or reject it.

[8]In fact, it was only until after approval of the PUD classification that Plaintiff could have filed an application for final site plan approval. Taylor Municipal Code, Appendix A, Art. 32.00, Section 32.03(2)(D)(3), J.A. at 418.

generalized right to choose one's field of private employment"). Based upon the Supreme Court's language in *Meyer*, this court has held that "freedom to choose and pursue a career" qualifies as a constitutionally protected liberty interest. *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir. 1983).

Assuming that the holding of *Wilkerson* is an appropriate extension of *Meyer*, Plaintiff has failed to allege facts sufficient to support even a plausible claim that Defendants interfered with its right to pursue its occupation as a developer. The factual allegations in the complaint only support a conclusion that Defendants interfered with Plaintiff's right to develop the *specific property* at issue in this case. Such an allegation is insufficient to establish a liberty interest. *See Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989) (noting that the plaintiff "was not denied the choice of his career, but remains free to pursue his chosen profession at another university"); *see also Wilkerson*, 699 F.2d at 326-27 (holding that plaintiffs alleged deprivation of liberty interest where state law denied them an opportunity to enter into the barbering profession altogether). Accordingly, Plaintiff also failed to state a procedural due process claim on the basis of a liberty interest.

### 2. Substantive Due Process Claim

Plaintiff also claims that Defendants violated its substantive due process rights. "The doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008) (quoting *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003)). "Government actions that burden the exercise of . . . fundamental rights or liberty interests are subject to strict scrutiny, and will be upheld only when they are narrowly tailored to a compelling government interest." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir.

2000). On the other hand, "[g]overnment actions that do not affect fundamental rights or liberty interests . . . will be upheld if . . . they are rationally related to a legitimate state interest." *Id.* at 575.

"To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest." *Silver*, 966 F.2d at 1036. Thus, insofar as Plaintiff has failed to assert a property or liberty interest for purposes of procedural due process, its substantive due process claims also fail. Even assuming that Plaintiff alleged a protected property interest based upon its purchase agreement with the City, this state-created contractual right is not "a proper subject of federal protection under the doctrine of substantive due process." *See Bowers*, 325 F.3d at 764 (holding that the state-created contractual right to a discount on one's water bills is adequately redressed in a state breach of contract action and therefore is not subject to substantive due process protections); *see also Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) ("The substantive Due Process Clause is not concerned with the garden variety issues of common law contract."). Regardless, the City has also offered a rational basis for its actions, which we discuss below in the context of the equal protection claim. The district court therefore properly dismissed Plaintiff's substantive due process claim.

## B. Motion to Supplement

The parties devoted much of their oral argument in this case to Plaintiff's next argument: that the district court erred when it denied Plaintiff's motion to file additional exhibits to the pending cross-motions for summary judgment. Both parties filed motions for summary judgment on July 9, 2007. On the same day, Plaintiff also filed a motion to compel discovery, which was referred to a magistrate judge. In the meantime, Plaintiff responded to Defendants' motion for summary

judgment on August 3, 2007. As an exhibit to its response, Plaintiff included an affidavit, signed

by Plaintiff's counsel, which stated that Plaintiff had not yet received complete responses to its

discovery requests. The affidavit also stated that "Plaintiff anticipates that additional facts essential

to justify its opposition to defendants' motion for summary judgment will be forthcoming in those

responses to discovery." J.A. at 2096.

On August 24, 2007, the magistrate judge granted Plaintiff's motion to compel and—in

accordance with Plaintiff's request that the documents be produced at least one week prior to the

summary judgment hearing— ordered Defendants to produce the documents on or before September

12, 2007. The hearing on the cross-motions for summary judgment was held as scheduled on

September 20, 2007. Plaintiff, however, claims that it was unable to complete its review of the 3,000

pages submitted by Defendants before the summary judgment hearing. Four days after the hearing,

Plaintiff filed an emergency motion to supplement its summary judgment pleadings with the

documents it had recently received from Defendants.

The district court denied Plaintiff's motion, treating it as a request for further discovery under

Rule 56(f) of the Federal Rules of Civil Procedure. Rule 56(f) allows a party to request additional

discovery prior to a district court's grant of summary judgment:

> If a party opposing the motion [for summary judgment] shows by affidavit that, for
> specified reasons, it cannot present facts essential to justify its opposition, the court
> may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken,
> or other discovery to be undertaken; or

(3) issue any other just order.

FED. R. CIV. P. 56(f). This case does not present the typical Rule 56(f) situation, however: at the time it filed its motion to supplement, Plaintiff was not seeking a continuance to conduct *further* discovery, it was seeking to supplement the record with discovery it had *already received*. Nevertheless, both parties have presented their arguments on this issue within the framework of Rule 56(f). And it is plausible that, at the time Plaintiff responded to Defendants' motion for summary judgment, Rule 56(f) obligated it to inform the district court of the need to wait for additional discovery if that discovery was indeed necessary to the district court's adjudication of the motion. *See Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 384 (6th Cir. 2008) (noting that a Rule 56(f) affidavit is "necessary in order to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery" (internal quotation marks omitted)).

To the extent that Plaintiff's argument is governed by Rule 56(f), however, it fails. Although the district court appears to have erred by not acknowledging the affidavit filed by Plaintiff's counsel in the response to Defendant's motion for summary judgment, any such error was harmless. Where a party fails to identify the material facts it hopes to uncover pursuant to Rule 56(f), a district court does not abuse its discretion in adjudicating a summary judgment motion without further discovery. *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 863 (6th Cir. 2005). Moreover, an affidavit that contains only general and conclusory statements or lacks any details or specificity is insufficient under Rule 56(f). *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004). Here, Plaintiff's affidavit provided no information whatsoever as to the relevance—let alone the materiality—of the requested discovery. Because the affidavit did not comply with Rule 56(f), the

district court was within its discretion in ruling on the summary judgment motions before additional discovery was submitted.

Moreover, to the extent that Plaintiff's argument can be seen as a challenge to the district court's refusal to allow supplementation of the record with already-discovered evidence, it still fails. First, Plaintiff received all of the time it had requested to review the documents. At the hearing on the motion to compel, counsel for Plaintiff asked the magistrate judge to order Defendants to produce the documents "a minimum of seven days prior to [the] motion for summary judgment hearing so that I have an opportunity to review those documents with my client." J.A. at 2312. The magistrate judge granted that request, ordering Defendants to produce the documents by September 12, 2007. Plaintiff cannot now complain that the time period its own attorney requested was inadequate. Second, Plaintiff failed to state specifically what the additional discovery documents would show, and how those documents were material to the district court's decision on the motion for summary judgment. Even at oral argument, Plaintiff was still unable to point to anything which, if presented to the district court, would have affected the outcome of this case. As a result, the district court did not abuse its discretion in denying Plaintiff's motion to supplement.

## C. Motion for Summary Judgment

Plaintiff next contends that—even without considering the additional evidence with which it sought to supplement the record—Defendants were not entitled to summary judgment on the equal protection claim. We review a district court's grant of summary judgment *de novo*. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c). At the summary judgment stage, the district court must construe the evidence

and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).

The Fourteenth Amendment provides that no state shall "deny to any person within its

jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Under the Equal

Protection Clause, the states cannot make distinctions that 1) burden a fundamental right; 2) target

a suspect class; or 3) intentionally treat one individual differently from others similarly situated

without any rational basis. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Where, as here, a plaintiff alleges a violation of the third type, it is said to proceed on a "class of

one" theory. *Club Italia*, 470 F.3d at 298.

To succeed on a "class of one" equal protection claim, Plaintiff must first prove that it has

been treated differently from similarly situated individuals. *Braun v. Ann Arbor Charter Twp.*, 519

F.3d 564, 575 (6th Cir. 2008); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000);

*Silver*, 966 F.2d at 1036. To satisfy this threshold inquiry, it must allege that it and other individuals

who were treated differently were similarly situated in all material respects. *See TriHealth, Inc. v.*

*Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005); *cf. Ercegovic v. Goodyear Tire & Rubber Co.*,

154 F.3d 344, 352 (6th Cir. 1998) (holding that, to make out a prima facie case of disparate

treatment, a plaintiff must show that he and other employees were similarly situated "in all *relevant*

respects").

Here, Plaintiff claims that the City Council has never denied a developer a second reading of its PUD classification after completing all prior administrative steps, and that the mayor has never unilaterally rescinded a purchase agreement without vote by the City Council. Plaintiff offered affidavits by current and former City officials in support of this assertion. Although these affidavits appear to create an issue of fact as to whether Plaintiff was treated differently than other developers, they do not specify how Plaintiff was similarly situated to any of these other developers. And "[b]are allegations that 'other' applicants, even 'all other' applicants, were treated differently" is insufficient; a plaintiff must show that "these 'other' applicants were similarly situated to the plaintiff." *GJR Inv., Inc. v. County of Escambia*, 132 F.3d 1359, 1367-68 (11th Cir. 1998).

Further, unlike any of the prior developers, Plaintiff's proposals were considered by two differently-composed City Councils—one composed before the November 8, 2005 elections, and one composed after the elections. The First Circuit has observed that timing and context are both relevant to the similarly-situated inquiry:

> In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment. . . . [C]ourts must be sensitive to the possibility that differential treatment—especially differential treatment following a time lag—may indicate a change in policy rather than an intent to discriminate. Consequently, the most reliable comparisons are likely to be from roughly the same time frame.

*Cordi-Allen v. Conlon*, 494 F.3d 245, 253 (1st Cir. 2007) (internal citation omitted); *see also Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002) (noting that individuals were not similarly situated where they submitted plat requests at different time periods and had the requests granted by different and previous boards). In this case, Mayor Priebe testified that part of his campaign was focused on slowing residential development in the City. Thus, even if Plaintiff is

correct that it was treated differently than developers had been treated in the past, the election of a new mayor and a new City Council—with new priorities—belies any assertion that Plaintiff and the prior developers were similarly situated. And although Plaintiff argues that Mayor Priebe approved a development agreement for a PUD of condominium units in the City after he was elected, Plaintiff does not identify how this project was similarly situated to its own.[9]

Even assuming that Plaintiff created an issue of fact as to whether it was treated differently than similarly situated developers, the City possessed a rational basis for its actions. "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth*, 430 F.3d at 788 (6th Cir. 2005).

In this case, the district court correctly concluded that Plaintiff "had not carried its heavy burden of negativing every conceivable basis" for the City's actions. *Id.* at 791. To overcome such a burden, a plaintiff "must demonstrate that the differential treatment [it] was subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [government's] actions were irrational." *Id.* The defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Club Italia*, 470 F.3d

---

[9]In fact, it appears that the development to which Plaintiff refers, Devonshire Cove, was approved by the City Council *before* the election, on August 16, 2005. J.A. at 2379. The Devonshire Cove development also only consisted of 40 condominium units, not the 240 condominium units sought by Plaintiff. Further, there was no showing that the approved development was originally planned on commercial property and required amendment of the zoning ordinance and Master Land Use Plan, as required for Plaintiff's proposed development.

at 297 (internal quotation marks omitted). Rather, "[t]he burden falls squarely to the plaintiff, who must overcome the presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law." *Id.*

Here, although they were not required to do so, Defendants produced affidavits and cited deposition transcripts establishing the rationale for their actions: they wanted to curtail residential development because of the oversaturated housing marking in the City, protect the City's financial interests, eliminate overly generous financial subsidies from the City to developers, and preserve green space and wooded land owned by the City. These are clearly reasonable and appropriate objectives for any city council and mayor to have. And although Plaintiff may disagree with them as a policy matter, it offered nothing to prove that they were irrational.

Further, Plaintiff cannot show that Defendants' actions were in any way motivated by ill-will or animus. To demonstrate animus or ill-will, "a plaintiff must prove that the challenged government actions were motivated by personal malice *unrelated to the defendant's official duties*." *Klimik v. Kent County Sheriff's Dep't*, 91 Fed. Appx. 396, 401 (6th Cir. 2004) (citing *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000)). Plaintiff claims that Priebe spoke out solely against Plaintiff's development before he became mayor, and committed several acts designed to ultimately thwart the project once he was elected. Indeed, this establishes that Defendants were diligent in acting to stop Plaintiff's project from proceeding. But Plaintiff has failed to produce evidence that Mayor Priebe or the City Council were motivated by any kind of personal malice or vindictiveness unrelated to their official duties or policy positions. Plaintiff's own vice president of marketing and director of sales testified that she did not believe Mayor Priebe had any intention to discriminate

against Plaintiff individually;  he would have done the same thing to any developer who was before

him at that time.  At most, then, Plaintiff's evidence demonstrated animus toward the *project*, not

toward Plaintiff itself.  Accordingly, summary judgment on the equal protection claim was proper.[10]

**D.  Judicial Bias**

Finally, Plaintiff argues that the district court judge exhibited improper bias in favor of

Defendants sufficient to warrant reversal of its rulings and remand to a different district court judge.

First, we note that Plaintiff has waived this issue on appeal by failing to raise it before the district

court in a motion to recuse or otherwise.  *Hurst v. Warren*, 62 Fed. Appx. 603, 605 (6th Cir. 2003).

Even were we to reach the merits of Plaintiff's claim, it would still fail.  We "will not ascribe

bias to a district judge in the absence of evidence that he has abandoned his role as an impartial

arbiter."  *Lilley v. BTM Corp.*, 958 F.2d 746, 753 (6th Cir. 1992).  To warrant recusal of a district

judge, a party must allege "facts which a reasonable person would believe would indicate a judge

has a personal bias" against the party.  *Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 681 (6th

Cir. 2001).  Judicial bias must be predicated on "a personal bias as distinguished from a judicial one,

arising out of the judge's background and association and not from the judge's view of the law."  *Id.*;

*see also United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966).

Here, Plaintiff alleges that the district judge was biased because he permitted Defendants to

submit untimely pleadings, responses to discovery requests, and other documents without sanction,

---

[10]Because Plaintiff cannot establish an equal protection violation, we need not address whether Defendants were entitled to summary judgment on the basis of qualified immunity.  *See Harrison v. Ash*, 539 F.3d 510, 517 (6th Cir. 2008); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).

and either denied or did not rule on several of Plaintiff's motions.  Notably absent are any facts that would support a finding of personal bias on the part of the judge.  A party cannot establish bias simply because it is unhappy with a district judge's rulings.  *Ullmo*, 273 F.3d at 681.  Accordingly, we reject Plaintiff's claim of judicial bias.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.