NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0301n.06

No. 13-4190

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MACHISA DESIGN SERVICES, INC., and ANTHONY C. UDEAGBALA, | ) ) ) | **FILED**<br>Apr 22, 2014<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| | ) | ON APPEAL FROM THE |
| COLUMBUS CITY BOARD OF EDUCATION, | ) | UNITED STATES DISTRICT |
| CAROLE J. OLSHAVSKY, GENE T. HARRIS, | ) | COURT FOR THE |
| CAROL L. PERKINS, OHIO SCHOOL | ) | SOUTHERN DISTRICT OF |
| FACILITIES COMMISSION, SMOOT ELFORD | ) | OHIO |
| RESOURCE INTERNATIONAL, URS DESIGN | ) | |
| CORPORATION, GEORGE ACOCK, and JEFF | ) | |
| CABOT, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GILMAN, GIBBONS, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiffs-appellants are Machisa Design Services, Inc., a professional design and architecture firm, and its sole shareholder, Anthony Udeagbala, an African American male of Nigerian descent (collectively "Machisa"). Machisa brought federal claims under 42 U.S.C. §§ 1981, 1983, and 1985, alleging that various individuals and entities interfered with, and eventually caused to be terminated, its contract with the School District of the City of Columbus (the "District"). The district court dismissed Machisa's federal claims on the pleadings. For the following reasons, we affirm.

**I.**

In early 2009, the District published a request for qualifications for an architect to design a new school facility. Machisa was chosen after a competitive selection process and entered into

a contract with the District in early 2010. Machisa alleged that racially discriminatory animus motivated the appellees to frustrate Machisa's performance of the contract and eventually caused the Board to terminate the contract.

Machisa brought suit in the United States District Court for the Southern District of Ohio, alleging violations of 42 U.S.C. §§ 1981, 1983, 1985, and a state-law claim for breach of contract. Machisa named as defendants: Carole Olshavsky, the Senior Executive Director of Facilities for the Columbus City Schools; the Board; Gene Harris, the Superintendent of the Columbus City Schools; Carol Perkins, the Board president; Smoot Elford Resource International ("S/E/R"), the construction manager under the contract; and George Acock and Jeff Cabot, members of an advisory body created by the Board.[1] Machisa alleged that Olshavsky was the primary actor responsible for stymying its efforts to perform the contract. As proof of discriminatory motive, Machisa alleged the following:

> 107. Olshavsky had prosecuted the project in the stated belief and conviction that Udeagbala was "not the right person" for this project. On one occasion, Olshavksy said to Udeagbala, "Your speech pattern is interesting. Other than you, your wife and two kids, who else do you have around here."

> 110. Upon information and belief, Olshavsky, Acock and Cabot have circulated information suggesting that Machisa was unqualified for the contract and that Machisa got the contract in the first place because Udeagbala, who owns Machisa, is black.

> 111. Upon information and belief, Acock falsely stated to third parties that they voted to hire Machisa because the district was trying to help a local ***black*** architect when they hired Machisa.

> 142. Olshavsky does not have a good track record of working with African American consultants and professionals.

---

[1]Machisa also named the Ohio School Facilities Commission and URS Design Corporation. The claims against those entities have been dismissed, and Machisa does not appeal those orders.

Machisa amended its complaint, adding claims for defamation and interference with contractual relations. After the defendants filed answers to Machisa's amended complaint, Machisa amended its complaint again. The defendants then moved for judgment on the pleadings, which the district court granted as to the federal claims.[2] Machisa timely appealed.

## II.

### A.

We review *de novo* the district court's dismissal of a complaint pursuant to Rule 12(c) in the same manner as we would review a motion under Rule 12(b)(6). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). We construe the complaint in the light most favorable to the plaintiff, accept the complaint's factual allegations as true, and determine whether the factual allegations present a plausible claim. *See id.* To survive a Rule 12(c) motion, as with a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). That is, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.

Machisa argues that the district court erred in dismissing with prejudice its § 1981 claim against S/E/R on the ground that Machisa failed to plead any facts from which a reasonable

---

[2]After dismissing the federal claims, the district court declined to exercise supplemental jurisdiction over the state-law claims. Machisa does not appeal this aspect of the district court's order.

inference could be drawn that S/E/R engaged in intentional racial discrimination.[3] To establish a claim for race discrimination under § 1981, a plaintiff must plead, *inter alia*, that the defendant intended to discriminate against him or her on the basis of race. *See Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). As the district court observed, the entirety of the allegations of racial discrimination by S/E/R were as follows:

129. As the construction manager under the contract between Machisa and the School District Board, Smoot Elford had a duty to the parties to the aforesaid contract to ensure that the project was carried out in accordance with the contract.

130. Smoot Elford also had a duty to inform or advi[s]e the parties to the contract whenever they departed from the terms of the contract or failed to comply therewith in the discharge of their obligations to each other under the contract.

131. At no time during the duration of the contract did Smoot Elford ever inform Machisa that Machisa was in violation of the terms of the contract or had failed to discharge its obligations under the contract to the School District Board.

132. By its conduct, Smoot Elford aided and abetted Olshavsky and the School District Board in their capricious modification or alteration of agreed upon design and other matters to the damage of Machisa and Udeagbala.

133. Upon information and belief, at no time did Smoot Elford ever inform Olshavsky that Olshavsky had no right to unilaterally change or alter the obligations which the parties owed to each other, especially after Machisa had complied with an earlier alteration or modification ordered by Olshavsky on a particular matter.

134. By its conduct and the manner in which it carried out its duty as construction manager of the project under the aforesaid contract, Smoot Elford caused plaintiffs to sustain loss and damage.

143. Defendants intentionally discriminated against plaintiffs on the basis of Udeagbala's race by constantly and capriciously interfering with plaintiffs' performance of the contract between Machisa and the School District Board, resulting in the constant modifications and ultimate termination of said contract by the School District Board.

---

[3]Machisa does not appeal the dismissal of its § 1981 claim as to the other defendants.

Like the district court, we conclude that the complaint contains no factual matter supporting a plausible inference of intentional race-based discrimination. Machisa requests in the alternative that it be given an opportunity to amend its complaint, although it has already filed two amended complaints. In its reply brief, Machisa states what it would plead if given the opportunity to amend. The additional proposed allegations do not articulate facts which support an inference of race-based discrimination; amendment is therefore futile. *See Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). We affirm the district court's dismissal with prejudice of Machisa's § 1981 claim against S/E/R.

## C.

Machisa argues that the district court erred in dismissing its due process and equal protection claims brought under § 1983.

## 1.

Machisa asserts only a procedural due process claim.[4] To prevail on a procedural due process claim, Machisa must establish that it possessed a constitutionally protected interest, that it was deprived of that interest, and that the state did not afford it adequate procedural rights prior to depriving it of that interest. *See, e.g.*, *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 830 (6th Cir. 2009). On appeal, Machisa asserts that it was deprived of two constitutionally protected interests: a property interest in the contract and a liberty interest in its own reputation.

With respect to Machisa's alleged property interest in the contract, not every deprivation of a constitutionally protected interest is actionable in a procedural due process suit. *Id*. at 831–32. A plaintiff may not bring a § 1983 action "when the deprivation is a simple breach of

---

[4]Machisa abandoned any substantive due process claim by raising it only in its reply brief.

contract and there is adequate state breach of contract action available as a remedy." *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988). The deprivation of Machisa's alleged property interest is not remediable in federal court in the first instance.[5]

Machisa's due process claim on the basis of its alleged liberty interest in its reputation also fails. Even assuming Machisa had a constitutionally protected interest in its reputation,[6] the actionable deprivation was the failure to provide it with a name-clearing hearing. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002). Before asserting a liberty-interest claim, a plaintiff must show that he or she "requested a name-clearing hearing and was denied that hearing." *Id.* at 322. Machisa neither pled nor argued that it requested a name-clearing hearing.

**2.**

"[R]acially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Machisa's allegations of racially discriminatory intent are as follows:

> 107. Olshavsky had prosecuted the project in the stated belief and conviction that Udeagbala was "not the right person" for this project. On one occasion, Olshavksy said to Udeagbala, "Your speech pattern is interesting. Other than you, your wife and two kids, who else do you have around here."

> 110. Upon information and belief, Olshavsky, Acock and Cabot have circulated information suggesting that Machisa was unqualified for the contract and that

---

[5]Machisa argues that Udeagbala cannot assert a breach-of-contract claim and therefore he is not precluded from bringing a procedural due process claim. But because he was not a party to the contract, he had no property interest in the contract and therefore cannot bring a procedural due process claim on this basis at all.

[6]"An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination." *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). Thus, the first element Machisa must show to establish that it was deprived of a liberty interest is that the "stigmatizing statements [were] made in conjunction with [Machisa's] termination from employment." *Id.* Machisa, hired by the city to perform on a discrete contract, does not explain how it was a city employee. Nevertheless, because Machisa's claim clearly fails for the reason detailed above, we will assume that it had a cognizable liberty interest.

> Machisa got the contract in the first place because Udeagbala, who owns Machisa, is black.
>
> 111. Upon information and belief, Acock falsely stated to third parties that they voted to hire Machisa because the district was trying to help a local ***black*** architect when they hired Machisa.
>
> 142. Olshavsky does not have a good track record of working with African American consultants and professionals.

These allegations fail to state a plausible claim that the Board terminated the contract for racially discriminatory reasons. With respect to Olshavsky, an isolated comment about Udeagbala's speech and a bare assertion, supported by no factual allegations, that Olshavsky does not have a good track record working with African Americans does not support the inference that Olshavky's dissatisfaction with Machisa was racially motivated. Indeed, the only plausible inference from Machisa's complaint is that Olshavsky's dislike of Machisa was professional. The complaint asserts:

> 125. Olshavsky's issues with Udeagbala and Machisa may have started in or about 2001, when Olshavsky and Udeagbala interviewed for a Downtown High School Project. This was before Olshavsky became executive director of facilities for the School District Board. Both Udeagbala and Olshavsky led two different design teams. Udeagbala's team won the project over Olshavsky's team.

Because Machisa failed to allege sufficient evidence of Olshavsky's discriminatory intent, a claim that Olshavsky terminated the contract or influenced the Board's decision to terminate the contract is unavailing, *see Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) (acknowledging cat's paw theory of liability). Nor can Machisa prevail on a similar theory against Acock or Cabot. *See id*. Machisa failed to allege factual matter supporting an inference that Acock or Cabot influenced the Board's decision to terminate the contract for race-based reasons. Machisa's complaint is devoid of any allegations of race-based animus as to any of the other defendants.

**3.**

Machisa argues that it stated a § 1983 claim against S/E/R, proceeding under the theory that S/E/R was a state actor because it acted in concert with the Board. Were we to conclude that S/E/R was a state actor, the § 1981 claim against it would fail for that reason. *See McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012). Moreover, Machisa's procedural due process claim against S/E/R would fail for the reasons articulated above. Machisa's equal protection claim also would fail because its complaint contains no factual matter supporting a plausible inference of intentional race-based discrimination on the part of S/E/R, even assuming S/E/R somehow caused the contract to be terminated.

**D.**

Because the complaint fails to set forth any constitutional claims, Machisa's conspiracy claim under § 1985(3) also fails. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 462 (6th Cir. 2011).

**III.**

For the foregoing reasons, the judgment of the district court is affirmed.