NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0216n.06

Case No. 21-3834

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| OBERER LAND DEVELOPERS LTD.; PETER RAMMEL, | ) ) ) | **FILED**<br>Jun 01, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) | ON APPEAL FROM THE |
| v. | ) ) | UNITED STATES DISTRICT COURT FOR THE SOUTHERN |
|  | ) | DISTRICT OF OHIO |
| SUGARCREEK TOWNSHIP, OHIO; SUGARCREEK TOWNSHIP, OHIO BOARD OF TRUSTEES, | ) ) ) | OPINION |
| Defendants-Appellees. | ) ) |  |

Before: GIBBONS, McKEAGUE, and THAPAR, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiffs appeal the district court's order granting summary judgment in favor of Defendants Sugarcreek Township, Ohio and the Township Board of Trustees on the plaintiffs' claims that the defendants violated the Equal Protection Clause of the Fourteenth Amendment and Takings Clause of the Fifth Amendment. They also appeal the district court's order dismissing their state-law claim without prejudice after declining to exercise supplemental jurisdiction. We affirm.

I.

Plaintiff Oberer Land Developers, Ltd. is a developer of residential real estate located in Dayton, Ohio, the seat of Montgomery County. Located just to the east of Montgomery County

is Greene County. This case concerns Oberer's development activity in Sugarcreek Township, a small municipality located in the southwest corner of Greene County. Sugarcreek Township's western border separates Greene County from Montgomery County and also separates the Township from the city of Centerville, a larger suburb of Dayton.

In 2004, Oberer's predecessor purchased over 200 acres of land in Sugarcreek Township for development. *See Sugarcreek Twp. v. Centerville*, 921 N.E.2d 655, 658–59 (Ohio Ct. App. 2009). The parties refer to this development as the Dille/Cornerstone property. Eventually, in 2006, Centerville annexed the Dille/Cornerstone property, shrinking the size of Sugarcreek Township. *Id.* at 662. Centerville's annexation of the Dille/Cornerstone property from Sugarcreek Township spawned years of litigation between the Township and Centerville regarding the tax consequences of the annexation. *See id.* at 658–63; *Sugarcreek Twp. v. Centerville*, 979 N.E.2d 261 (Ohio 2012); *Sugarcreek Twp. v. Centerville*, 2014 WL 895420 (Ohio Ct. App. Mar. 7, 2014). Oberer alleges that the Board of Trustees, the Township's legislative body, harbors ill will toward Oberer because of the Dille/Cornerstone litigation.

In 2013, the Township adopted a "Long-Range Land Use Plan" to, among other goals, "[r]etain the rural character of the township" and to "[p]rotect the geographic boundaries of" the Township given projected growth in the Dayton region. The Plan divided areas of the Township into "Planning Areas" and called for the "evaluation of the Planning Areas in light of heightened annexation threats." This is the Township's zoning map, as annotated by its director of Planning and Zoning:



Relevant here are Planning Areas 1 and 3. Planning Area 1 is in the northwest corner of the Township, which now includes the subdivisions of Woodland Ridge, Black Farm, and Oak Brooke annotated on the map. Planning Area 3 is in the more rural southwestern side of the Township and encompasses the Rammel Farm, also annotated on the map. According to the Plan, Planning Area 1 was a priority area for residential development. Given the projected growth of the Dayton region (which the Township anticipated would increase the demand for housing as people move outward from the Dayton suburbs), the Township hoped that by increasing the capacity for development in Planning Area 1—an already populated area of the Township—"the

- 3 -

pressure to develop the rural properties in the south will be reduced." To that end, the Plan recommended that the principal use of the more rural Planning Area 3 should "continue to be for agricultural uses" and noted that the area was a priority for "conservation subdivisions characterized by the clustering of lots to preserve 50 percent or more of a site."

To protect its land from the threat of annexation by neighboring municipalities, such as Centerville, the Township Board of Trustees offered "Non-Annexation Agreements" to property owners. In 2014, the Board of Trustees entered into one such agreement with the owner of the Rammel Farm, plaintiff Peter Rammel. Under the agreement, Rammel agreed for a period of 10 years "not to seek and to oppose any annexation of any portion" of his 107 acres of property. In exchange, the Township agreed not to impose tax increment financing legislation on the property during that period.

Despite the alleged ill will toward Oberer, the Board of Trustees approved multiple Oberer developments in the Township following the Dille/Cornerstone litigation. In 2014, the Board approved a rezoning application for the Oak Brooke development in Planning Area 1. In 2015, it approved a rezoning application for the Woodland Ridge development, also in Planning Area 1 seen on the map above. Both of these developments involved a rezoning from "A-1 (Agriculture) District to PUD-R (Residential Planned Unit Development) District[.]"

Following the developments in Planning Area 1, Oberer sought to develop the Rammel Farm in Planning Area 3. In 2017, Rammel agreed to sell a portion of the farm to Oberer "for the purpose of development, subject to necessary governmental approvals." Oberer then began the process of getting the proposed development approved.

Oberer first met with the Greene County Regional Planning Commission. Its initial proposal included 113 lots. During the Greene County commission meetings, a Sugarcreek

Township trustee wanted Oberer to address certain traffic issues in the proposal. Accounting for the road construction necessary to address those issues, Oberer subsequently revised its proposal to include 98 lots, and the Greene County commission recommended approval of Oberer's proposal.

To carry out its proposed 98-lot development, Oberer applied to rezone its portion of the Rammel Farm from Rural Estate Resident District (E-Rural) to Residential Planned Unit Conservation Development District (R-PUCD). Oberer was the first developer, and Rammel the first landowner, to request R-PUCD zoning in that area. The purpose of an R-PUCD district is to "maintain and protect the rural, natural, and scenic qualities of Sugarcreek Township . . . where 50% of a site is preserved as open space." R. 28-1 at Ex. 1, ¶ 4. The purpose of E-Rural, on the other hand, is to allow for "residential lots of a relatively rural and spacious nature . . . in outlying rural areas where urbanization is not expected to occur" any time soon. *Id.*

The first stop for Oberer's application was the Township Board of Zoning Commission, which makes recommendations to the Board of Trustees on whether to grant or deny a rezoning application. At a public meeting of the zoning commission in December 2018, over 130 residents attended, many of whom voiced opposition to the proposed development. They voiced concern about the threat of annexation, that the development would increase traffic and population density, and that it would decrease the scenic open space characteristic of the Township. One resident, whose family had lived in Sugarcreek Township since the 1950s, stated that residents would circulate a referendum if the application was approved and would "easily" get the necessary 450 signatures. After considering the application and listening to the public's concerns, the Zoning Commission voted unanimously to recommend denial of Oberer's application due to "concerns about density, traffic, and a failure to meet the standards for an R-PUCD." *Id.* at Ex. 1, ¶ 10.

One member also noted the non-annexation agreement between Rammel and the Township and that the 2013 Long-Range Land Use Plan identified the Rammel Farm as a high risk area for annexation.

Oberer next presented its application to the Board of Trustees. In a February 2019 public meeting, residents again attended and voiced concerns about the proposed development. The Board tabled deliberations until March. At the March meeting, the Board of Trustees deliberated and unanimously voted to deny Oberer's application. Individual trustees noted that a proposed development has never had such a level of input from citizens. They came to the consensus that the proposed development did not keep with the character of the Township and did not meet the goals of the Long-Range Land Use Plan. One trustee noted that she saw "no reason" to overturn the Zoning Commission's recommendation but that the Township could work with Oberer on a different plan for the Rammel Farm.

Soon after the Board denied the application, Oberer and Rammel filed this suit against Sugarcreek Township and the Township Board of Trustees in the Southern District of Ohio. Oberer and Rammel asserted several federal constitutional claims under 42 U.S.C. § 1983 and claims under Ohio law. The Township and the Board moved to dismiss, which the district court granted in part and denied in part. Three of Oberer and Rammel's claims survived: that the defendants violated the Equal Protection Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment, and that Rammel's non-annexation agreement is invalid under Ohio law. Both parties subsequently moved for summary judgment. The district court granted summary judgment in favor of the Township and the Board of Trustees on Oberer and Rammel's federal claims. It dismissed the remaining state-law claim without prejudice after declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Oberer and Rammel appeal.

II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-movant. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate when there are no genuine issues of material fact and a party must prevail as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). Oberer and Rammel appeal the district court's grant of summary judgment on their equal protection and takings claims. We address each in turn.

## A. Equal protection claim

Proceeding under a "class-of-one" theory, Oberer and Rammel claim that the Township violated the Fourteenth Amendment's Equal Protection Clause in denying their rezoning application. To succeed on a class-of-one claim, they must show (1) that they were "intentionally treated differently from others similarly situated" and (2) that "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). "Class-of-one claims are generally viewed skeptically," so Oberer and Rammel bear a "heavy burden" to prevail. *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461–62 (6th Cir. 2012) (citation and internal quotation marks omitted); *see also TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005) ("This standard of review is 'a paradigm of judicial restraint,' growing out of recognition that 'equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices.'" (citation omitted)).

Oberer and Rammel's class-of-one claim cannot withstand summary judgment. While the first prong is generally a fact issue for the jury, Oberer and Rammel have produced no evidence that Township treated them differently from others similarly situated. *See Loesel*, 692 F.3d at 462. Class-of-one claims concern different treatment of "individuals[,]" so the relevant inquiry focuses

on "the properties *and their owners.*" *Id.* at 463 (emphasis added). Oberer and Rammel focus their analysis entirely on three comparator developments that the Township approved in Planning Area 1. But notwithstanding the material differences in those developments from the Rammel Farm—such as their location in Planning Area 1 of the Township and the fact that none of those developments were zoned under R-PUCD—Oberer and Rammel say nothing about different treatment of the *owners* of those developments. *See id.* Indeed, Oberer itself was the developer for two of those three developments that the Township approved in Planning Area 1, thus undercutting any inference that the Township has treated Oberer differently from other property owners in violation of the Equal Protection Clause.

They have also failed to create a genuine dispute regarding whether the Township lacked a rational basis for denying their application. To show that the Township lacked a rational basis for its action, Oberer and Rammel must either "negat[e] every conceivable basis which might support" the action or show that the government action "was motivated by animus or ill-will." *Anders v. Cuevas*, 984 F.3d 1166, 1179 (6th Cir. 2021) (quoting *Warren v. City of Athens*, 411 F.3d 697, 711 (6th Cir. 2005)). The Township has "no obligation to produce evidence to sustain the rationality of its action;" the burden is on Oberer and Rammel to show that the action was "irrational." *TriHealth, Inc.*, 430 F.3d at 790–91 (citations omitted).

In arguing that the Township lacked a rational basis, Oberer and Rammel rely exclusively on the theory that the Township's decision was motivated by animus against Oberer. "Animus is defined as 'ill will, antagonism, or hostility usually controlled but deep-seated and sometimes virulent.'" *Loesel*, 692 F.3d at 466 (quoting *Webster's Third New International Dictionary, Unabridged* (2002)). Importantly, to succeed on an animus theory, plaintiffs must show that the

animus was against them specifically and not just against the proposed development. *Id.* at 467 (collecting cases).

Oberer and Rammel claim that the Board of Trustees must have had animus against Oberer because of protracted litigation that ensued between the Township and the city of Centerville because of Oberer's Dille/Cornerstone development in 2006 (and the subsequent annexation of that development by Centerville). *See Sugarcreek Twp.*, 921 N.E.2d at 658. But, as the district court correctly noted, the record contains no evidence supporting that allegation. Without any evidence to show that the Dille/Cornerstone litigation created animus against Oberer, which then motivated the Township's actions here, the inference of animus Oberer and Rammel ask us to draw amounts to pure speculation insufficient to survive summary judgment. *See Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017).

Oberer and Rammel point to the evidence that the Rammel Farm was "identified as a high risk area for annexation" and that the "Township took measures to avoid annexation from happening" because of Oberer's Dille/Cornerstone development. Appellants' Br. at 31–32. At most, however, this evidence supports that the Township had animus against the proposed development, not against Oberer or Rammel. *See Loesel*, 692 F.3d at 467; *see also Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 838 (6th Cir. 2009) (affirming summary judgment against developer on class-of-one claim where the developer's "evidence demonstrated animus toward the *project*, not toward [the developer] itself"). One trustee even noted her willingness to work with Oberer on a different plan for the Rammel Farm. And the Township's approval of other Oberer developments in 2014 and 2015 negates any inference that the Township secretly harbored animus against Oberer because of the Dille/Cornerstone project. The Township and the Board of Trustees are entitled to summary judgment.

B. **Takings claim**

Next, Oberer and Rammel challenge the Township's denial of their zoning application as a regulatory taking.[1]  The Fifth Amendment's Takings Clause, made applicable to state governments through the Fourteenth Amendment, states: "[N]or shall private property be taken for public use, without just compensation." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) (quoting U.S. Const. amend. V).  "Takings" can fall into two general categories.  The first, *per se* takings, occur when the government acquires, occupies, or regulates in a way that "physically appropriates" private property.  *Id.* at 2071–72.  The second, regulatory takings, occur when government regulation goes "too far" in restricting an owner's use of the property.  *Id.* (citation omitted).

A regulatory taking can either be "categorical" or "non-categorical[.]"  *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 482–83 (6th Cir. 2004).  A taking is "categorical" where the challenged "regulation deprives property of all [economic] value."  *Id.* (citation omitted); *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1028–32 (1992).  A taking is "non-categorical" if the challenged regulation does not deprive the property of all economic value, but nonetheless goes "too far."  *Coal. for Gov't Procurement*, 365 F.3d at 482–83.

Oberer and Rammel argue that the denial of their rezoning application deprived them of "all economically viable use of the Property"—and thus it amounts to a categorical taking—

---

[1] The Township argues that Oberer and Rammel's takings claim is not ripe under the finality requirement set out in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985).  The Supreme Court recently overruled *Williamson County* in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), but left in place *Williamson County*'s finality requirement: that a takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."  *Williamson Cnty.*, 473 U.S. at 186; *Knick*, 139 S. Ct. at 2169.  Here, the Township does not contend that the Board of Trustees decision denying the rezoning application was not final.  Thus, *Knick* and *Williamson County* do not bar Oberer and Rammel's takings claim.

because the cost of developing the property under its current zoning would "exceed the potential lot sales and return on investment." Appellants' Br. at 34–36. This argument misconstrues what it means for property to lose all economically viable use. *See Lucas*, 505 U.S. at 1028–32. In *Lucas*, for example, the plaintiff acquired two beachfront lots along the South Carolina coast with plans to build single-family residences on the lots. *Id.* at 1008. But *after* the plaintiff acquired the property, South Carolina enacted beach preservation legislation that prevented the plaintiff from building any structures on the lots, thus depriving the lots of any economic value. *Id.* at 1008–09, 1020. Here, unlike the lots in *Lucas*, the Rammel Farm remains worth $564,000 under its current zoning, according to Oberer's own expert. The fact that Oberer, according to its expert, would be unable to make a profit if it developed the property under its current zoning does not mean that the property has no economic value. The Takings Clause does not guarantee a return on investment for private property developers.

The Township's denial of the zoning application did not deprive the Rammel Farm of all economic value, so Oberer and Rammel's claim could only fall into the "non-categorical" bucket. To determine whether a regulation amounts to a "non-categorical" regulatory taking, courts apply an "ad hoc, factual inquiry" set out by the Supreme Court in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104 (1978). *Coal. for Gov't Procurement*, 365 F.3d at 483. The *Penn Central* inquiry involves "three significant factors: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* Applying those factors here, the Township's denial of Oberer's zoning application does not come close to a regulatory taking.

*1) Economic impact.* Oberer submits expert testimony that the value of the Rammel Farm undeveloped and zoned as E-Rural is $564,000. The denial of the rezoning application did not decrease that value; it prevented the Rammel Farm from realizing a higher value had the land been rezoned as R-PUCD for development. But that is far from what is required to establish a regulatory taking. *See Concrete Pipe & Prod. of Cal., Inc. v. Const. Laborers' Pension Tr. for S. Cal.*, 508 U.S. 602, 645 (1993) (collecting cases) (explaining that a "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking").

*2) Investment-backed expectations.* Oberer and Rammel have not shown that the denial of their application interfered with any "distinct investment-backed expectations[.]" *Coal. for Gov't Procurement*, 365 F.3d at 483. The purchase agreement between Oberer and Rammel is "subject to necessary government approvals" for Oberer's planned development. In other words, the contract expressly accounts for the risk that the proposed development would not get the Township's necessary approval. Because the approval upon which the sale was contingent did not occur, Oberer did not invest in developing the property and risk losing money on its investment. And Rammel will be left with his property at it was. This case is not one where a developer "bought their property in reliance on a state of affairs that did not include the challenged regulatory regime." *Loveladies Harbor, Inc. v. United States*, 28 F.3d 1171, 1177 (Fed. Cir. 1994) (collecting cases), *abrogated on other grounds by Bass Enters. Prod. Co. v. United States*, 381 F.3d 1360, 1369–70 (Fed. Cir. 2004). The denial of Oberer and Rammel's "ability to exploit a property interest" that they thought *might* be "available for development" is insufficient to establish a regulatory taking. *Penn Cent. Transp. Co.*, 438 U.S. at 130.

*3) Character of the government action.* The final factor also cuts against Oberer and Rammel. The *Penn Central* test aims "to identify regulatory actions that are functionally

equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 457 (6th Cir. 2009) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005)). Here, the legitimate denial of a rezoning application is not at all "functionally equivalent to the classic taking" where the "government directly appropriates private property[.]" *Id.* (citation omitted). Nor did the Township force Oberer or Rammel to "alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

In sum, the Township and the Board of Trustees are entitled to summary judgment on Oberer and Rammel's takings claim.

### III.

Oberer and Rammel also appeal the district court's dismissal of their state-law claims without prejudice after declining to exercise supplemental jurisdiction. "We review a district court's decision declining to exercise supplemental jurisdiction for an abuse of discretion." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 709 (6th Cir. 2012) (citing *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010)). We reverse only if "we are left with 'the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors.'" *Id.* (quoting *Gamel*, 625 F.3d at 951). District courts have "supplemental jurisdiction over" all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). But a district court "may decline to exercise supplemental jurisdiction" if, among other factors, "the district court has dismissed all claims over which it has original jurisdiction[.]" *Id.* § 1367(c)(3). That is what the district court did here.

Out of comity to state courts, this circuit applies a "strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011). District courts should retain supplemental jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)); *see also Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims" without prejudice.).

The district court was well within its discretion to decline supplemental jurisdiction and leave it to Ohio courts to pass judgement on this local land dispute. To Oberer and Rammel, the validity of the non-annexation agreement—an issue of state law that could have important local consequences—undergirds this whole dispute. Thus, while re-filing in state court will be "inconvenient" for them, they have not shown that the "interests of judicial economy and the avoidance of multiplicity of litigation outweigh" the strong presumption in favor of declining supplemental jurisdiction out of comity to Ohio courts. *Packard*, 423 F. App'x at 584–85 (citation omitted).

## IV.

We AFFIRM the district court's judgment.